## JANE DOE v. JOHN DOE—438 S.W.2d 353

Eastern Section.  October 9, 1968.

Certiorari Denied by Supreme Court February 3, 1969.

James Pryor, Knoxville, for appellant.

John W. Morton, Oak Ridge, for appellee.

McAMIS, P.J.   In this case both parties seek a divorce. The wife filed the original bill charging cruel and inhuman treatment based principally upon an occur-

rence when complainant claims to have been restrained of her liberty, threatened and intimidated and falsely accused of various ''schemes'' against defendant while he was on a trip to Florida.

Defendant answered the bill denying all of the charges, denying that complainant had been forced to withdraw from the home and asserting that complainant, prior to the separation, had been guilty of adultery with Ray Ellison. The answer was filed August 31, 1966.

On October 20, 1966, defendant husband filed a cross bill avowing his love for complainant and alleging that she had been a dutiful wife during the thirty-three years of marriage until she came under the influence of Ellison a number of years before the separation; that on the morning of June 27, 1966, complainant while in a depressed and nervous state announced she was leaving him but that he did not at that time ''realize the full scope of the relationship between cross-defendant and Mr. Ellison'' and that he then left in a state of shock due to complainant's announcement for Florida to regain his composure. Upon returning unexpectedly he found complainant in a car with Ellison.

On November 18, 1966, the cross bill was amended to charge complainant with frequent acts of adultery, the first being in 1963 while defendant was in Nevada on a trip for his employer, and thereafter frequently in Oak-Ridge, both before and after the separation. The amendment continues:

''The cross complainant would show unto the court that, as above stated, the cross defendant removed herself from the parties home on July 16, 1966. Since that date the parties hereto have not cohabited with each

other. The cross complainant avers that at the time of the removal of the cross-defendant from the parties home on July 16, 1966 he had no knowledge of any adultery with Raymond D. Ellison. The cross-complainant further avers that the cross-defendant whenever questioned on the subject of her relationship with Raymond D. Ellison, maintained that she and Raymond D. Ellison were mearly (sic) friends with a mutual interest in music.

"The cross-complainant avers that on the evening of July 31, 1966 at the home of the cross-defendant's mother that the cross-defendant admitted her adultery with Raymond D. Ellison, which occurred during the first two weeks in May, 1963 and further admitted her adultery with Raymond D. Ellison, on other occasions. This admission was in the presence of her mother and the cross-complainant. He further avers that until the admission on this date he had no knowledge of the cross-defendant's adultery."

On November 29, 1966, complainant answered the amended cross bill and amended the original bill. In this pleading she admitted having committed adultery with Ellison in 1963 but denied any further adulterous relationship with him. She also asserted for the first time that defendant throughout the marriage had forced her to submit to unnatural sex practices and that on his return from Florida defendant "made her submit to sexual relations" and "knowingly condoned her relationship with Ray Ellison". It was alleged the last act of sexual intercourse occurred on July 16, 1966, on which date complainant finally withdrew.

Defendant answered by denying his former pleading was inconsistent, as charged, with his disclaimer of any

knowledge of adultery on the part of complainant until after the separation, denying that he was a sex deviate, asserting that every sex contact during the marriage resulted in sexual intercourse and that the sex relationship of the parties was normal and mutual.

After a full hearing the Court found that neither of the parties had come into court with clean hands and dismissed both the original bill and the cross bill.

Thereafter, complainant petitioned for a rehearing and defendant petitioned for permission to amend his cross bill to charge cruel and inhuman treatment. The petition contains the following:

"In support of this allegation, the defendant cross-complainant avers that the complainant cross-defendant admitted on the stand under oath that she had been guilty of adultery with one Ray Ellison and that she desired to marry him, and that she saw him in her apartment daily and that they frequently kissed, embraced, and expressed their love for each other on these occasions. She further admitted that she had loved the said Ray Ellison for a period of twelve (12) years prior to her separation from her husband and that she had long since desired to marry him."

Although complainant's testimony at the trial fully supports these allegations, the record reveals no action on this petition to amend.

On May 5, 1967, the Court filed a second memorandum opinion reversing his former opinion and holding that "while this Court is still of the opinion that the conduct of the parties has been such as to not warrant the granting of relief to either party" there was no hope the parties would ever live together and that the complainant

wife should be granted a divorce from bed and board for one year, to become final at the end of one year in event the parties had not then become reconciled.

From this holding and from the Court's original holding that he had come into court with unclean hands defendant has appealed.

A careful reading of the record has convinced us complainant completely failed to sustain any of the charges of her bill with the possible exception of sexual deviation.

The charge that complainant was held captive after the episode following defendant's return from Florida is negatived by her admission that during this time she went to a restaurant and a swimming pool with defendant and also that her son was present a part of the time. There was no attempt to escape. She testified at the trial defendant while in a wildly emotional state threatened to kill himself in her presence but admitted he made no attempt to harm her, as she had charged in the bill.

Moreover, defendant's conduct on this occasion was the result of complainant's initial breach of marital duty and her announcement she was leaving defendant for another man. It could hardly be expected that such an announcement by the mother of his three grown children and his wife of 33 years could be calmly accepted by defendant.

As to the sexual deviation complainant testified that she was forced to participate in this practice during the entire thirty-three years of marriage but on cross examination she admitted that the practice could not have been carried out without her co-operation and that the

only "force" brought to bear upon her was ill temper on the part of defendant when she refused.

It seems to us under the circumstances this complaint comes too late to form the basis for a divorce, especially since it was not mentioned in the original bill and complainant admits she had sexual relations with defendant throughout the marriage and on July 16, 1966, when the separation occurred. Her testimony that these acts were forced upon her is not convincing and is totally uncorroborated.

"While it is true that cruel and inhuman treatment as a ground of divorce cannot be condoned in the same sense that adultery as a ground of divorce may be condoned, and thereby in legal contemplation wiped out, nevertheless, there is a principle that cruel and inhuman treatment may be forgiven and cannot thereafter be relied upon as a ground for divorce, except upon some revival or new act which brings back into life the former misconduct previously forgiven. McClanahan v. McClanahan, 104 Tenn. 217, 228, 56 S.W. 858; Garvey v. Garvey, 29 Tenn.App. 291, 203 S.W.2d 912; Humphreys v. Humphreys [39 Tenn.App. 99], 281 S.W.2d 270, certiorari denied by Supreme Court, Dec. 17, 1954." Schwalb v. Schwalb, 39 Tenn.App. 306, 282 S.W.2d 661.

Complainant having not only admitted adultery with Ray Ellison but also having openly carried on since the separation almost daily a tawdry relationship with him, next to be considered is whether defendant condoned this adultery.

T.C.A. Section 36-811 makes it obligatory on the defendant to allege and prove condonation. Thus the burden of proof is upon the defendant to show affirma-

tively, to use the language of the statute, "that the complainant has admitted the defendant into conjugal society and embraces after knowledge of the criminal act." Compare Stepp v. Black, 14 Tenn.App. 153.

■ This burden includes a showing that the complaining spouse had "knowledge of the criminal act." And we think the use of the term "society" implies more than a perfunctory physical act of copulation, although nothing else appearing condonation from the act itself may be inferred.

Condonation, apart from statute, has been variously defined as a state of mind, McCarthy v. McCarthy, 123 Conn. 409, 195 A. 607, a blotting out of the offense and restoration of the offending spouse to the same position occupied before the wrong, Greco v. Greco, 32 Del. 242, 121 A. 666, or facts warranting the presumption that there has been forgiveness, reconciliation, reunion and restoration of all marital rights. Melinn v. Melinn, 329 Mich. 96, 44 N.W.2d 886; Martin v. Martin, 166 Va. 109, 184 S.E. 220; 27A C.J.S. Divorce sec. 59, pp. 193, 194.

■ In this case it is obvious cross defendant was not seeking either forgiveness or reconciliation. She testified she was forced to submit. Defendant testified she remained passive. Whether true or not she was not seeking to be restored and was never restored to the "society" of complainant but chose to leave defendant on the same day the last of these acts occurred and openly continued her association with Ellison. Under the circumstances there was no condonation.

■ We are also of opinion complainant failed to show that defendant had previous knowledge of her adultery with Ellison. Defendant testified he had known

for a long time that Ellison was making improper advances but he also thought his wife was resisting him. Apparently, even though having knowledge of this infatuation, he could not bring himself to believe complainant, a woman of culture, a constant church attendant and the mother of his three children, would indulge in an act of intercourse with Ellison. He testified that even when she told him of her guilt he did not believe it but thought she was attempting to induce him to bring an action for divorce—that he believed it only after complainant, following the separation, admitted to her mother in his presence that she had had relations with Ellison "a few times". Perhaps his wish to believe her innocent was father to the thought that she was not actually guilty.

By the terms of the statute itself knowledge—not suspicion—is essential. And, of course, reason teaches that it is not possible to condone an act until it is known to have occurred.

The courts are not entirely agreed as to the character and degree of knowledge required to sustain the defense of condonation. As some courts have expressed it, there must be probable knowledge, that is, information from credible persons as to what they have seen. Other courts say the aggrieved and forgiving spouse must have full knowledge of antecedent guilt. Still others say there must be such knowledge as would satisfy a reasonably prudent person that the offense has been committed, giving full weight to the trust and confidence which husband and wife are entitled to place in each other. There appears to be unanimity in holding that mere suspicion or rumor is not enough and it is said the innocent spouse must have the means of proving such misconduct, other-

wise he will be placed in a dilemma where he cannot prove guilt and will be left defenseless when charged with desertion. See collected cases, annotation, 109 A.L.R. beginning at p. 686, also 24 Am.Jur.2d 366, Divorce, Section 210.

Consistent with the rule that before an aggrieved spouse will be denied relief on the ground of condonation there must be the ability to prove the act, a number of the collected cases hold that a confession of guilt by the erring spouse standing alone is not sufficient.

We think this is the correct view and that until complainant confessed her guilt in the presence of her mother and defendant there was no legal condonation. We find this was after July 16th when the parties last cohabited.

The trial judge seems to have found defendant judicially estopped by his pleadings to deny he had knowledge of complainant's guilt prior to July 16th. We have quoted above the language of the amended cross bill expressly denying knowledge of adultery with Ellison until after that date. We find nothing in defendant's pleadings admitting knowledge prior to July 16th.

For the reasons indicated the original bill is dismissed and the cross bill sustained. The decree of this Court will award cross complainant a divorce on the ground of adultery. The cause will be remanded generally and particularly for the purpose of carrying out the property settlement.

The action of the Trial Justice Court ordering the payment of costs out of the sales of mutually owned property will continue in effect. Costs of appeal will be taxed to appellee.

Cooper and Parrott, JJ., concur.