Marie Robinson GILLIAM,
Plaintiff/Appellee,

v.

Manley Gene GILLIAM,
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

June 15, 1988.

Application for Permission to Appeal
Denied by Supreme Court Sept. 26, 1988.

Vern Franklin Chumney, Decaturville, for defendant/appellant.

Diane E. Bell and Hayden Lait of Byrd, Cobb, Norwood, Lait & Baboglu, Memphis, for plaintiff/appellee.

TOMLIN, Presiding Judge (Western Section).

Plaintiff (hereafter "Wife") filed suit against defendant (hereafter "Husband") in the Chancery Court of Shelby County, seeking a divorce on the grounds of cruel and inhuman treatment and adultery. Husband counterclaimed, seeking a divorce on the ground of cruel and inhuman treatment. Protracted litigation and multiple motions, most of which were promulgated by Husband, ensued. Following a bench trial the chancellor granted Wife a divorce

on the grounds of cruel and inhuman treatment and adultery and dismissed Husband's counter-complaint. The parties' marital property was divided almost equally. Wife was awarded alimony *in solido* totaling $100,000. In addition, Husband was ordered to pay a major portion of Wife's attorney fees. The parties have one minor child, but the issue of custody is not before us.

On appeal Husband presented some nine major issues together with eight sub-issues. We decline to track the issues as stated by Husband. Instead, we restate them as follows: Did the chancellor err (1) in allowing testimony of defendant's alleged adulterous conduct after the filing of the complaint by Wife? (2) in failing to find condonation on the part of Wife? (3) in finding Husband guilty of cruel and inhuman treatment? (4) in the amount of alimony *in solido* awarded Wife? (5) in awarding Wife $32,000 in attorney fees? (6) in his evaluation of the parties' marital property? and (7) in refusing to hear testimony from the parties' minor child except under certain specific conditions? Aside from a modification in the amount of alimony *in solido* awarded Wife, we affirm the decree of the chancellor.

The parties were married in 1961. Two children were born of the marriage. At the time of trial the daughter had attained her majority, and the parties' son was then eleven years old. The parties were in college at the time they married. Wife quit school in order to pay for Husband's education. In the early years of the marriage she worked in a pants factory. Subsequent to Husband's graduation, Wife continued to work as a seamstress in other clothing factories. Around 1970 the parties moved to Memphis. Wife went to work as a hairdresser in a beauty salon where she was employed until 1985. At time of trial she had quit work and had returned to college, working toward a degree in nursing.

Throughout most of the parties' marriage Husband was employed as a traveling salesman by the Uniroyal Chemical Company. As a general rule his work required him to be away from home for the major part of each week during most of the marriage. The record reflects that the marriage of this couple was far from peaceful and far from loving. It also reflects that virtually all of the trials and tribulations of the marriage were caused or contributed to substantially by Husband.

### I-A. PLAINTIFF'S GROUNDS FOR DIVORCE.

Husband neither questions the granting of a divorce to Wife nor does he challenge the granting of a divorce to Wife on the ground of adultery. He does contend that the chancellor erred in admitting testimony pertaining to his adulterous conduct that occurred following the filing of the complaint by Wife. Husband contends that the chancellor erred in discounting his defense of condonation as to any alleged adultery occurring prior to the filing of the complaint. Husband further contends that the chancellor erred in granting Wife a divorce on the ground of cruel and inhuman treatment. We hold that these contentions are without merit.

Several times during the presentation of Wife's evidence Husband's counsel objected to the introduction of alleged post-separation acts of adultery by Husband. Subsequently Wife moved the court to permit her to amend her complaint to conform to the evidence presented, pursuant to Rule 15.02, T.R.C.P. At the time the oral motion was made and granted no objection was made by Husband. However, at a later date Husband's counsel did object to a proposed order allowing the amendment that was to be presented to the trial court.

This Court would state at the outset that the memorandum opinion filed by the chancellor was a very thorough, well-written one. Because of its quality, this Court will take the occasion to quote from it from time to time.

 The chancellor very precisely and thoroughly addressed the issue of defendant's adultery, stating in part as follows:

> The court holds that the record establishes that the defendant is guilty of a continual course of adulterous conduct that

existed prior to and after the filing of this divorce.

Adultery can be proven by circumstantial evidence without direct proof of illicit intercourse, *Canning vs. Canning* [59 Tenn.App. 678], 443 S.W.2d 502 (Tenn. App.1968), and the proof in the instant case raises the strongest possible inference of defendant's adulterous inclination and disposition and establishes the requisite opportunity to satisfy such inclination. At least six witnesses, Michael Hughes, Mattie Hughes, Albert Hegman, Paula Anderson, Ann Hunter and plaintiff, are all credible as to the issue of an ongoing pattern of adulterous conduct by the defendant. These witnesses were impressive and truthful. According to the testimony, defendant was a boastful man with regard to his insatiable sexual appetite. Defendant admitted having had affairs with Faye Higginbotham, Peggy Sharpe and Mary Bourne. The proof established that defendant was involved intimately with Ms. Sharpe as early as 1976. The proof established further that defendant was involved intimately with Ms. Bourne as early as 1976 and at least as late as 1986. The record shows Ms. Bourne called defendant's office frequently leaving messages and attempting to contact him. Defendant and Ms. Bourne dined alone publicly. Defendant was frequently at Ms. Bourne's home during his non-working hours. Defendant's truck was seen at her home all night. He mowed her lawn and took out her trash. Defendant changed at least two of his insurance policies to name Ms. Bourne as sole beneficiary. Ms. Bourne, in turn, often deviated from standard bank procedures to perform favors for defendant. She wrote most of his personal monthly checks. She addressed defendant's Christmas cards and kept his personal diary.

Aside from defendant's protestations, we find nothing in the record to counteract the preponderance of evidence concerning defendant's adulterous conduct introduced by Wife. It was defendant's position that everyone else was lying, but he was telling the truth. The chancellor found the defendant not to be a credible witness, stating that he was "a wilful perjurer in his testimony." He was also found to be evasive and a distorter of facts. Where a case is tried upon oral testimony without the intervention of a jury, as is the case here, the trial judge's finding of fact dependent upon the credibility of witnesses is entitled to great weight in the appellate courts. *Fiddler's Inn, Inc. v. Andrews Distributing Co.*, 612 S.W.2d 166 (Tenn.App.1980).

■ In an effort to counter the strong evidence against him, defendant contended that notwithstanding the fact that he had committed adultery, Wife, by continuing marital cohabitation with defendant, condoned his misconduct. T.C.A. § 36–4–112 states that condonation is a defense to an act or acts of adultery.

The Eastern Section of this Court in *Doe v. Doe*, 59 Tenn.App. 108, 438 S.W.2d 353 (1968), discussed the application of the condonation statute to divorce proceedings couched in adultery. It stated:

> T.C.A. § 36–811 [now 36–4–112(2)] makes it obligatory on the defendant to allege and prove condonation. Thus the burden of proof is upon the defendant to show affirmatively, to use the language of the statute, "that the complainant has admitted the defendant into conjugal society and embraces after knowledge of the criminal act."
>
> . . . .
>
> Condonation, apart from statute, has been variously defined as a state of mind, *McCarthy v. McCarthy*, 123 Conn. 409, 195 A. 607 [1938], a blotting out of the offense and restoration of the offending spouse to the same position occupied before the wrong, *Greco v. Greco*, 32 Del. 242, 121 A. 666 [1923], or facts warranting the presumption that there has been forgiveness, reconciliation, reunion and restoration of all marital rights. [citations omitted]

*Id.* 438 S.W.2d at 356.

In his opinion, the chancellor had this to say as to the condonation defense:

> Defendant asserts as defense that plaintiff condoned defendant's adulter-

ous acts. The Court holds that condonation is not a valid defense in the instant case. Even though there was a continuation of marital cohabitation, after defendant admitted to plaintiff his affairs with two women, this alleged condonation was ineffective for three reasons:

1. Defendant did not make a full disclosure regarding the number of his paramours.

2. Defendant induced by fraud the resumption of marital relations because he did not have a sincere intent to forego the adulterous relationship; and

3. Defendant secretly engaged in adulterous relationships after the alleged condonation.

The proof in this record does not preponderate against these findings. To the contrary, it supports it.

## I–B. THE GROUND OF CRUEL AND INHUMAN TREATMENT.

■ Proof establishing cruel and inhuman treatment on the part of one spouse toward another is not limited to acts of physical violence. Our courts have found various types of offensive and abusive conduct to constitute cruel and inhuman treatment. A willful, persistent course of abusive and humiliating treatment by one spouse against another was considered to be cruel and inhuman treatment in *Baber v. Baber*, 205 Tenn. 681, 330 S.W.2d 307 (1959). False charges of adultery were treated as cruel and inhuman treatment in *Evans v. Evans*, 558 S.W.2d 851 (Tenn. App.1977). Where the proof showed that one spouse continually and systematically used profane language toward the other, that, along with other misconduct, was found to be cruel and inhuman treatment. *See Schwalb v. Schwalb*, 39 Tenn.App. 306, 282 S.W.2d 661 (1955).

■ Addressing this issue in the case before us the chancellor stated:

Defendant's dominion and control over his wife was so severely excessive and abusive it caused her extreme and severe mental pain, anxiety and fear. Defendant deliberately and repeatedly falsely accused plaintiff of adultery without cause or reason to support such allegations. Further, defendant subjected plaintiff to frequent rude, ill-tempered, grossly indecent and offensive language.

Plaintiff testified that defendant's constant jealousy and suspicion made it impossible for her to remain in the homeplace without constant conflict, anxiety and fear. Defendant continually falsely accused her of committing adultery, and, frequently, these attacks on her character were made in the presence of the parties' children. Defendant's accusations were accompanied by defendant's constant monitoring of plaintiff's activities. As a consequence, plaintiff found she could only associate with women in order to minimize these unwarranted attacks. The testimony of Cynthia Toddy and Paula Anderson corroborated plaintiff's testimony.

Mattie Hughes, Mike Hughes, Albert Hegman, and Katherine Hughes testified that defendant's foul language was a way of life with him. These witnesses testified that defendant insulted plaintiff in the presence of others and was demanding and critical of his wife.

Defendant impressed the Court as being a man with a distorted view of himself as the tragic hero. Defendant's behavior is evidence of his deliberate disregard for the sanctity of the marital and family relationships. The record on the whole establishes that defendant is a man who systematically persecuted his wife and victimized his family.

We find no error here.

## II. ALIMONY *IN SOLIDO*.

The chancellor awarded Wife alimony *in solido* totaling $100,000. It was calculated as follows: all right, title and interest in the parties' rental property located at 5312 Bronte Avenue in Memphis, valued at $40,-353, and $59,647 in cash to be paid over a nine-year period in monthly payments of $839.75, the principal sum bearing interest at the rate of ten percent. The real estate had earlier been set aside to Husband in the division of marital property.

Fault and need are to be considered in determining alimony in divorce actions. *See Fisher v. Fisher*, 648 S.W.2d 244 (Tenn.1983). Along with need, the ability to pay is one of the cornerstones for the award of alimony. *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn.App.1984). Furthermore, a wife whose marriage has been shattered by husband's misconduct should not be left in a financial condition inferior to her economic situation prior to the parties' divorce. *Shackleford v. Shackleford*, 611 S.W.2d 598 (Tenn.App.1980).

The chancellor found, and we agree, that notwithstanding the fact that Wife left her career as a hairdresser to get an education to be a nurse, a profession that will enable her to earn considerably more money, Wife will have additional expenses as a single person. She will now have the obligation to carry the mortgage on her residence in Memphis as well as on the rental property awarded to her in the division of marital property. The balance on these two mortgages alone at time of trial totaled approximately $42,000. In addition, she must assume the balance of the mortgage on the real property awarded to her as alimony *in solido*. The combined payments on the mortgages on these three pieces of property total $1,252 a month. In addition to the mortgage payments, Wife will be responsible for all taxes, insurance and maintenance on these properties.

The amount of alimony to be awarded is a matter for the discretion of the trial court in view of the particular circumstances. The appellate courts are not inclined to alter such awards except where the record reflects that such discretion has been abused. *See Newberry v. Newberry*, 493 S.W.2d 99 (Tenn.App.1973); *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288 (1964). The record not only reflects that Wife presently has a need, but it also clearly establishes that Husband is able to pay a fairly substantial amount of alimony. His total gross annual income approximates $50,000. Furthermore, Husband testified that he and his minor son contemplated living in Scotts Hill with his

mother, who has been shown to have a substantial amount of assets of her own.

We concur with the chancellor's finding that the Husband was clearly at fault for the collapse of this marriage, and that during the process of dissolution Wife was subjected to extreme cruel and inhuman treatment. However, taking into account the additional award of attorney fees in favor of Wife, we are of the opinion that some modification should be made in the alimony *in solido* award. This Court is of the opinion that the monetary aspects of the alimony award should be reduced to $35,000. Until and unless Husband elects to pay this amount in a lump sum, when the judgment of this Court or any other Court in which this case is appealed becomes final, Husband shall pay to Wife the sum of $500 per month plus interest on the unpaid balance at the rate of ten percent per year.

### III. ATTORNEY FEES.

In divorce actions, attorney fees awarded to a party are treated as alimony. *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288 (1964). If the wife is awarded alimony *in solido* in an amount that will adequately cover her needs and attorney fees, there is no occasion for the court to fix a fee. *Ligon v. Ligon*, 556 S.W.2d 763 (Tenn.App.1977).

However, from an examination of this record it can readily be seen that the amount of attorney fees charged to Wife by her attorney were brought about in large measure by the litigious conduct of Husband and the obstructionist tactics and legal maneuvering in which he engaged over a period of months. This is not in any way to indicate that a litigant should not be free to fight his cause with zeal to the extent necessary to prevail. In this case it appears that Husband went beyond the bounds of reason.

The technical record contains more than three hundred pages. It appears that Husband used the judicial process as a retaliatory weapon against Wife. He testified that retaliation is a "mode of life." His aunt testified that Husband said that his

attorney was ruthless, and that the only person who would gain from this divorce would be the attorneys. The record reflects that, among other things, Husband abused the discovery process. As noted by the chancellor, "[f]or example, plaintiff's counsel had to file at least three motions to compel discovery and production of documents. Also, due to defendant's evasive tactics, false responses, attempts to hide assets, false allegations and complete unwillingness to cooperate ..." Wife was penalized with increased litigation expenses. Husband raised frivolous and false claims against Wife, which forced her to undertake extensive and expensive investigations and to call numerous witnesses to disprove these false claims, such as being guilty of child abuse, using foul language, transferring funds of the parties to her own name, etc. In addition, Husband would make false responses to interrogatories and depositions. In short, Husband, through his counsel, consistently engaged in a course of legal stone-walling and obstructive tactics in an attempt to not only wear down Wife, but to deplete her assets as well.

The attorney fees in the amount of $32,000 ordered by the chancellor to be paid by Husband was $5,000 short of Wife's total legal expenses, not taking into account her legal fees on appeal. While Wife was awarded some liquid assets as marital property, under the circumstances of this case we do not feel justified in requiring her to utilize marital property to pay her attorney fees, which would have the effect of totally extinguishing these liquid assets. Furthermore, we have no assurance, nor does Wife, that the cash award of alimony *in solido* will be paid in any manner other than monthly. We feel it fitting and proper that a substantial portion of Wife's attorney fees should be borne by Husband.

## IV. THE EVALUATION OF THE MARITAL ESTATE.

Husband contends that in dividing the parties' marital assets the chancellor overvalued some of the property, particularly the real estate, awarded to him. In this connection he first contends that it was error for the trial court to refuse to allow his expert witness to testify as to the value of the parties' farm. Nowhere in his brief does Husband identify who this expert witness was. The record reflects that the chancellor did rule that a certain appraiser could not testify on behalf of Husband, noting that Husband could make an offer of proof to preserve this witness' testimony on appeal. Husband failed to make an offer of proof. Therefore, this Court cannot consider this issue. *See Canning v. Canning*, 59 Tenn.App. 678, 443 S.W.2d 502 (1968).

Husband's argument that the chancellor erred in not accepting his evaluation of the farmland is without merit. Husband testified that the land was worth between $550 and $600 an acre, while Wife testified that it was worth $800 an acre. The chancellor found the value to be $675 per acre. We find no error here.

Finally, Husband contends that the chancellor erred in failing to take into account certain debts allegedly owed by him to his mother. Husband testified that he owed his mother $18,512.53 as of time of trial, and that this amount was thus a liability of the marital estate. On the other hand, Wife testified that the money was given to the parties by Husband's mother from time to time as gifts. The chancellor chose to believe Wife and not Husband. The evidence does not preponderate against the chancellor's finding.

## V. TESTIMONY OF THE PARTIES' MINOR CHILD.

 Husband asserts that the chancellor abused his discretion in refusing to hear testimony from the parties' minor child as to the child's preference of a parental home in chambers with counsel being present but without the benefit of a court reporter. The original motion as filed by Husband sought only to have the chancellor hear testimony from the parties' minor son in regard to his personal preference concerning custody. However, when the motion was later stated to the court, it was to the effect that the child be heard by the

chancellor in chambers without the presence of a court reporter but with all counsel present. The chancellor denied the motion, stating for the record that he did not believe that it was appropriate to have the child give testimony in an adversarial setting with attorneys present, and that considering the young age of the child, the chancellor was reluctant to do so even on a one-on-one basis. The trial court has wide discretion in determining whether it should take the testimony of a minor child, and once this decision has been made his discretion will be reviewed only for gross abuse. *State v. Fears*, 659 S.W.2d 370 (Tenn.Cr. App.1983). This record reflects no abuse of the court's discretion in this regard.

Wife's motion to have this appeal declared frivolous is denied. Except for the modification of the award of alimony *in solido* as stated above, the decree of the chancellor is in all other respects affirmed. Costs in this cause are taxed to Husband, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.