# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

BRIDGET C. RASMUSSEN,      )
                                        )

       Plaintiff/Appellant,    )

                                          )      Montgomery Chancery
                                          )      No. 95-07-0128

VS.                        )

                                          )

                                          )      Appeal No.
LEIF C. RASMUSSEN,      )      01A01-9705-CH-00211

                                          )

       Defendant/Appellee.    )

## DISSENTING OPINION

**FILED**

**December 12, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

I concur that the visitation arrangements in the trial court's November 7, 1996 order should be re-examined. I cannot, however, concur that these parties should be put to the time and expense of re-litigating the custody issue. In light of the record before us, I find no colorable basis for concluding that the trial court erred by granting these parties joint custody with primary physical custody going to the father.

This case involves a marriage that lasted less than two years. Captain Lief C. Rasmussen is a career officer in the United States Army, and Bridget C. Rasmussen is the daughter of a career serviceman. The parties' only child, a son, was born in September 1994, and the parties separated less than one year later. Following a full trial in January 1996, during which the parties and twelve other witnesses testified, the trial court determined that the parties should be granted joint custody of their son but that Captain Rasmussen should have primary physical custody. Because the parties continued to live in close proximity to each other, the trial court also granted Ms. Rasmussen liberal visitation rights similar to the pendente lite visitation arrangements.

After the January 1996 trial, Captain Rasmussen informed the trial court that the Army had transferred him to Fort Huachuca, Arizona and requested the trial court to modify the visitation arrangement to provide Ms. Rasmussen with extended holiday and summer visitation. Ms. Rasmussen responded with three proposals of her own. First, she suggested that she should have custody of the child for the first

six months after Captain Rasmussen's transfer because his military schooling would prevent him from caring for the child. Second, she proposed an alternating split custody arrangement which would require the child to fly between Arizona and Tennessee every two weeks. Third, she proposed granting her sole custody so that she and the child could move to Virginia to live with her parents.

The trial court conducted another hearing in November 1996 to consider visitation arrangements in light of Captain Rasmussen's transfer to Arizona and Ms. Rasmussen's stated intention to move to Virginia. After considering the testimony of the parties and five other witnesses, the trial court devised a visitation plan that required the parties to exchange the child twice in 1997 and five times between January and April 1997. The visitation arrangements thereafter are not entirely clear. It is this very lack of clarity that prompts me to concur that Ms. Rasmussen's visitation rights should be reconsidered and defined more precisely.

The court has gone farther, however, and has directed the trial court to reopen the custody issue as well. The court's opinion offers little insight into the basis for its decision other than the cryptic comment that "the best interests of the child do not appear to have been fully developed." I confess to being at a loss to understand what this observation means. What particular aspect of the child's best interests was not adequately developed? Was it the fact that Captain Rasmussen is a career officer? Surely the court does not mean to imply that military personnel should not be awarded custody of their children. Was it the court's disagreement with the trial court's findings concerning Ms. Rasmussen's parenting skills? If it was, surely the court could point to the evidence in the record preponderating against the trial court's findings.

A best interests analysis requires a careful consideration of many factors. *See* Tenn. Code Ann. § 36-6-106 (1996); *Holloway v. Bradley*, 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006 (1950); *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). Because trial courts have the advantage of observing the demeanor of the witnesses, we should be reluctant to second-guess their custody decisions. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988). When we must reverse or vacate a custody decision, we have an obligation to the parties and to the trial court to explain how the proof was deficient. When we provide an explanation, we avoid the

appearance of being arbitrary, and we enable the parties to focus their efforts during the subsequent hearings.

This case now returns to the trial court for another trial in which the custody of this three-year-old child again hangs in the balance. Neither Captain Rasmussen nor Ms. Rasmussen reside in this state. They will have been gone for approximately two years by the time this hearing occurs. Tennessee is no longer the home state of either of these parents or their son. Thus, after this case is remanded, the trial court and the parties should carefully consider whether the Chancery Court of Montgomery County is the proper forum for litigating custody and visitation issues.

_____
WILLIAM C. KOCH, JR., JUDGE