

# FILED

October 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE


CARLYSS A. CATIGNANI    )
                        )
           Plaintiff/Appellant,    )        Appeal No.
                        )        01A01-9806-CV-00269
                   v.        )
                        )        Davidson County Circuit
SHARON ELAINE PHILLIPS        )
CATIGNANI                )        No.  97D-382
                        )
           Defendant/Appellee.   )
                        )


COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT
FOR DAVIDSON COUNTY


THE HONORABLE MURIEL ROBINSON PRESIDING


JOHN J. HOLLINS, JR.
Hollins, Wagster & Yarbrough, P.C.
424 Church Street
2210 SunTrust Center
Nashville, Tennessee 37219


ATTORNEY FOR PLAINTIFF/APPELLANT


D. SCOTT PARSLEY
Barrett, Johnston & Parsley
217 Second Avenue, North

Nashville, Tennessee 37201-1601

ATTORNEY FOR DEFENDANT/APPELLEE

**AFFIRMED AS MODIFIED AND REMANDED**

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, P.J., M.S.
CAIN, J.

# OPINION

This appeal arises from a divorce proceeding ending the second marriage between the parties. Mr. Catignani ("Husband") appeals the distribution of property and the type and amount of alimony ordered by the trial court following a hearing in the Davidson County Circuit Court. For the following reasons we affirm as modified.

I.

The parties first married in November of 1975. Two children, now adults, were born during the marriage. In September of 1988 Mrs. Catignani ("Wife") was granted a divorce in the Probate Court of Davidson County. Following that divorce Wife appealed the division of marital property to this court.

In October 1989 this court rendered an Opinion modifying the trial court's order. *See Catignani v. Catignani*, No. 89-147-II, 1989 WL 126726 (Tenn. Ct. App. Oct. 25, 1989). The parties owned three parcels of land in Davidson County, one of which, with 6.1 acres, included the marital home. With regard to the marital home, this court awarded half to each party and ordered Husband to pay the monthly mortgage payments, taxes, and insurance on the property. Wife and the then minor children were given the right to live in the house until the younger child reached eighteen years of age. When the younger child reached eighteen, either party had the right to petition the court to have the marital home sold. Following the sale, Husband was to be reimbursed for his post-divorce mortgage

payments, taxes and insurance payments on the real property. The remaining proceeds were to be divided evenly between the parties.

This court also considered the alimony awarded to Wife and concluded that the amount of rehabilitative alimony ordered by the trial court, $150 per month for fourteen months, was insufficient, at least as to duration. The alimony was increased to $150 per month "until such time as the wife has been rehabilitated." *Catignani*, 1989 WL 126726 at *1. This award was based upon this court's findings that Wife was at an economic disadvantage relative to Husband, had not worked outside the home since the birth of her older child, and had "no particular work skills."

After their first divorce the parties resumed their relationship. Although Husband claimed he had maintained a separate residence, the trial court found that they began cohabiting in the marital home within a year of the first divorce. The parties remarried in June 1996, but eight months later in February 1997 Husband filed for their second divorce. Wife filed an Answer and Counter-Complaint for divorce. At trial the parties stipulated to the award of a divorce to Wife on the grounds of inappropriate marital conduct, pursuant to Tenn. Code Ann. § 36-4-129, and a hearing was held on the issues of property distribution and alimony.

After the hearing herein the trial court ordered that the parties' real property be sold and the net proceeds be equally split between them. The court ordered that Husband be reimbursed for one year's worth of the mortgage payments he made on the parties' residence after the first divorce. Wife was awarded a $16,000 share of husband's annuity funds as well as $12,000 representing half of the increase in Husband's annuity during the second marriage. Husband was ordered to pay alimony of $750 per month and to make unreimbursed payments on the house until it was sold. After the sale of the house, Husband was to pay $1,000 per month as alimony *in futuro*. Husband was also ordered to pay Wife's attorney fees. Husband appeals these decisions.

II.

We review the findings of fact by the trial court *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the

evidence is otherwise. *See* Tenn. R. App. P. 13(d). Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. *See Gillock v. Board of Prof'l Responsibility*, 656 S.W.2d 365, 367 (Tenn.1983).

III.

Husband's first issue relates to the distribution of marital property. Trial courts have wide discretion in the manner in which marital property is divided, and their decisions are accorded great weight on appeal. *See Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App.1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App.1987). The trial court's decision on the distribution of marital property is presumed correct unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Wallace*, 733 S.W.2d at 107.

Husband appeals the trial court's order regarding distribution of the proceeds from the sale of the marital residence. In essence, he claims that he is entitled to the distribution ordered by this court in its 1989 Opinion and that the trial court was required to ignore events occurring after that order.

In 1989 this court ordered that when parties' younger child turned eighteen, either party had the option to have the property sold, and at that time Husband would be entitled to be reimbursed for "all sums he had paid since the date of divorce as mortgage payments, taxes and insurance on real property, and all remaining net proceeds would be divided equally between the parties." *Catignani*, 1989 WL 126726 at *2.

Husband paid $65,720 in mortgage, tax and insurance payments from October 1988 until May 1995 when the couple's younger child turned 18. He paid a total of $75,449 from the first divorce until the second marriage, and he paid a total of $91,613.10 until the date of the hearing in this matter. He now argues that he is entitled to the entire $91,613.10 or, in the alternative, at least the $75,449 he paid prior to the second marriage in June 1996. He claims that the prior Opinion of this court entitles him to be reimbursed for this money.[1]

The trial court herein ordered that the residence be sold, that out of the proceeds Husband be

reimbursed one year's worth of payments on the residence which was determined to be $9,756, and that the remainder of the proceeds be divided equally between the parties. Regarding the reimbursement to Husband of only one year's worth of payments, the trial court stated, "the Court makes this finding because of the proof demonstrating that the parties resumed living together shortly after the Court of Appeals decision." Husband disputes this factual finding. He testified at the trial regarding various dates when the parties resumed cohabitation, apparently making a distinction between spending nights at the marital home and "moving back in for good," but did admit that the parties lived together intermittently between the marriages. Wife testified that the couple was separated only a few months after the first divorce, although she admitted that Husband did not spend every night at the marital home. The evidence in the record does not preponderate against the trial court's finding that Husband lived in the marital home for most of the time between the marriages. The effect of this court's 1989 Opinion was that the marital residence was still jointly owned by the parties after the divorce. It is undisputed that the parties' younger child turned eighteen in May of 1995 and that neither party, at that time or later, initiated the sale of the residence as authorized by the 1989 Opinion. When the parties remarried, the residence was still jointly owned, and they jointly refinanced the house during their second marriage.

This court has previously reviewed divisions of property between spouses who had previously been married to and divorced from each other. *See Flanagan v. Flanagan*, 656 S.W.2d 1 (Tenn. Ct. App.1983); *Hardin v. Hardin*, 689 S.W.2d 152 (Tenn. Ct. App.1983); *Reed v. Reed*, (no case number given), 1986 WL 7866 (Tenn. Ct. App. July 16, 1986)(no Tenn. R. App. P. 11 application filed). These cases have consistently held that second marriages between the same parties are treated as if the parties had married different people. That premise has been stated as:

> [W]e deem it proper to treat the second marriage of the same parties as we would treat any other marriage. The parties entered the second marriage with full knowledge of who was the legal owner of the various parcels of land. This court is without authority to review the distribution of the property of the first decree . . . . We accept that division and treat each party coming into the second marriage as the owner of the property as allowed in the first decree.

*Hardin*, 689 S.W.2d at 154 (quoting *Viar v. Viar*, (Tenn. Ct. App. Dec. 9, 1981) (no Tenn. R. App.

P. 11 application filed)); *see Flanagan*, 656 S.W.2d at 3; *Reed*, 1986 WL 7866 at *2. Once a court has divided the marital property, it becomes that party's separate property, and if the parties remarry and divorce, what was separate property before the second marriage remains separate property. *See Flanagan*, 656 S.W.2d at 3; *Hardin*, 689 S.W.2d at 154; *Reed*, 1986 WL 7866 at *2.

Husband relies on this line of cases to argue that he is entitled to be reimbursed for the payments he made on the couple's residence pursuant to this court's 1989 Opinion. He asserts that he should be reimbursed because if the parties had never been married the first time, Wife would have no legal claim to the equity in the marital residence. The case at bar, however, is distinguishable from *Hardin* and *Reed* in that the marital home in this case never became the separate property of either party after the first divorce. It was jointly owned at the time of their remarriage, and they jointly refinanced it. In the refinancing, they borrowed additional money, thereby reducing the equity in the residence. Husband never asserted his right to force a sale when the younger child turned eighteen. Instead, he continued living in the marital residence, and later remarried Wife. There can be no question that the residence was marital property when the couple divorced the second time.

We note that the court in *Flanagan*, while holding that the separate property before the remarriage remains separate, refused to enforce the wife's claims of debts owed, but never paid, from the prior divorce between the same parties. *See Flanagan*, 656 S.W.2d at 2-3. *Flanagan* involved the third divorce between the same parties. In that case, the husband appealed from the trial court's order that he pay the wife, as alimony *in solido*, half the proceeds of the sale of the house at the dissolution of the third marriage.[2] The wife claimed that the prior divorce decree, which was not in the record of the third divorce proceeding, provided that she was to quitclaim her interest in the home in exchange for the husband purchasing an automobile for her and paying off a lien on her trailer. She admitted to having executed the quitclaim deed, but testified that the husband had beaten her up and forcibly taken the deed from her without buying the car or paying off the lien. The wife argued that since the husband had not complied with the previous order, he was not entitled to claim full ownership of the property on the basis

of her quitclaim to him. The court held that the husband's obligations arising from the previous divorce should have been "attended in the previous divorce by contempt or some other proceeding and not ... collaterally attacked in this proceeding."[3] *Flanagan*, 656 S.W.2d at 3.

The Illinois Court of Appeals, in addressing the issue of the effect of a remarriage between parties to a divorce upon the decree of divorce, stated the same concept very clearly:

> We do conclude, however, that the remarriage of the parties does render the prior divorce decree unenforceable. Thus, to the extent the prior divorce decree has been fully complied with, it has the full force and effect of any other judgment rendered by a court of competent jurisdiction. For example, a division of marital property which has been effected, executed, and completed is not nullified by the remarriage of the parties. Should the parties remarry, they come into the marriage with respect to this property as if they had never been married. However, with respect to provisions of the divorce decree which have not been fully executed, upon remarriage of the parties, no action may be brought to enforce those provisions.
>
> ...
>
> [A]n unexecuted or incomplete property settlement, as here, simply cannot be enforced once the parties remarry each other.

*In re Marriage of Parks*, 630 N.E.2d 509, 513 (Ill. App. 1994).

In the case before us, Husband never took the steps available to him to force the sale of the residence, and the distribution of the funds was never effected. Neither the residence nor the funds Husband now claims ever became his separate property before the second marriage. To the extent that Husband argues that he can enforce a right to repayment, granted by the first divorce decree but never asserted, and that the trial court cannot consider the parties' actions after the first divorce decree, including their remarriage, we respectfully disagree. The parties' actions herein, including specifically the joint refinancing of the residence with a decrease in the equity, indicate that they treated the residence as joint or marital property.

Having determined that the real property in question, including the equity therein, was marital property at the time of the second divorce and, therefore, subject to distribution, our only remaining question is whether the trial court's distribution was equitable. The trial court found that Husband paid mortgage, taxes and insurance for the marital residence for only one year during which he was not living in the home. In light of the fact that the trial court ordered Husband compensated for that year, we find

that the otherwise even division of parties' real property was equitable. We affirm the trial court's order regarding the distribution of proceeds from the sale of the marital home.

IV.

Husband next appeals the trial court's division of his retirement fund. As a result of the first divorce, Husband was granted all right and title to his vested retirement plan with Southern Colortype, valued at the time at $35,676, provided:

> he remains employed at Southern Colortype until retirement. In the event Mr. Catignani becomes entitled to the proceeds of that plan because of his death before retirement eligibility, one half (½) of the proceeds are awarded to his children if they are under eighteen (18) years of age at the time of death. If Mr. Catignani draws the proceeds because he leaves the company, then Mrs. Catignani shall be entitled to $8,000.00 and the children shall be entitled to $8,000.00.

*Catignani*, 1989 WL 126726 at *2 (quoting the trial court order) (emphasis added).

In September of 1995, about nine months before the second marriage, Husband was laid off from his position at Southern Colortype. He withdrew the money from his retirement fund and moved it into an annuity fund without informing Wife that he had done so. The value of the annuity increased from approximately $91,000 to approximately $115,000 during the second marriage. The trial court awarded Wife $16,000 as her share of Husband's original retirement fund under the first divorce decree, and $12,000 as half of the increase during the marriage.

Husband argues that the trial court abused its discretion by awarding Wife $16,000 from his annuity fund, but concedes that she is entitled to $8,000. He also argues that the trial court erred in awarding Wife one half of the increase in value of the annuity fund during the second marriage.

Under the terms of the original divorce, Wife became entitled to $8,000 the moment that Husband removed the money from the Colortype retirement fund.[4] We hold that Wife is now entitled to the $8,000 she should have received in 1995. In addition, since she was deprived of the opportunity to invest those funds, Wife is entitled to 10% interest per annum on the $8,000 from the date the funds were withdrawn until the date of the remarriage.[5]

The trial court ordered Husband to pay Wife $16,000, which apparently includes the $8,000

which should have been paid to the parties' children under the original divorce decree and the 1989 Opinion of this court.[6] We find no basis for the trial court to award the children's $8,000 to Wife. Accordingly, the trial court's order is modified to award $8,000 plus interest as described above to Wife.

The trial court also ordered that Wife be paid one half of the increase in value of Husband's annuity fund during the second marriage. Marital property includes retirement benefits, both vested and unvested, that accrue during the marriage. *See Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn.1996). An interest in a retirement benefit plan is marital property subject to division under Tenn. Code Ann. § 36-4-121(a)(1) (1996). *See Cohen*, 937 S.W.2d at 830.

In *Cohen*, our Supreme Court reiterated three observations:

1) Only the portion of retirement benefits accrued during the marriage are marital property subject to equitable division.

2) Retirement benefits accrued during the marriage are marital property subject to equitable division even though the non-employee spouse did not contribute to the increase in their value.

3) The value of retirement benefits must be determined at a date as near as possible to the date of the divorce.

*Id*.

Accordingly, we agree that the increase in the value of Husband's annuity fund during the second marriage, $24,000, was marital property, and thus subject to equitable division.

Tenn. Code Ann. § 36-4-121(c) sets forth factors[7] which are intended to guide the court in making an equitable distribution of marital property. Considering those factors and based on the record which shows that Husband's income is approximately four times greater than Wife's, we cannot say that the evidence preponderates against an even division of the increase in the annuity. Accordingly, we affirm the trial court's award of $12,000 to Wife as her share of the increase in the value of the annuity fund during the marriage.

V.

Husband argues that the trial court abused its discretion by awarding Wife $750 per month until

the house is sold and $1,000 per month after the sale as alimony *in futuro*. Husband contends that the trial court failed to make a threshold determination that wife was not subject to rehabilitation prior to awarding her alimony *in futuro*. Further, he argues that he does not have the ability to pay alimony at the amount set by the trial court.

Tennessee law provides for three types of alimony: (1) rehabilitative alimony, which provides modifiable, temporary support for a period of adjustment sufficient to enable a dependent spouse to become partially or totally self-sufficient; (2) periodic alimony or alimony *in futuro,* a continuing, but modifiable, support obligation to an economically disadvantaged spouse; and (3) alimony *in solido*, an unmodifiable lump sum award which may be paid over time. Tenn. Code Ann. § 36-5-101(d)(1); *see Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App.1997). The legislature's stated preference is for rehabilitative alimony whenever possible. *See* Tenn. Code Ann. § 36-5-101(d)(1). A finding that rehabilitation is "not feasible" is required before an award of alimony *in futuro* is appropriate. *Id.*; *see also Loria*, 952 S.W.2d at 840.

In determining whether to award spousal support, the type of support, and the amount and duration thereof, courts must consider a number of factors. *See* Tenn. Code Ann. § 36-5-101(d)(1).[8] The initial determination must be whether

one spouse is economically disadvantaged relative to the other. *See id.* In addition, the two most important factors in setting spousal support are the demonstrated need of the disadvantaged spouse and the obligor spouse's ability to pay. *See Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App.1996). Because support decisions are factually driven and involve considering and balancing numerous factors, appellate courts give wide latitude to the trial court's discretion. *See Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App.1989).

Husband, age 45, earns $35,000 annually plus bonuses. In 1995 he earned $49,040, in 1996 he earned $44,097, and in 1997 he earned $44,183. Wife is 42 years old and began working as a special education school bus driver in 1992. She also works part-time cleaning a church. She earned $10,122

in 1997 and \$13,242 in 1996. Thus, Wife was significantly economically disadvantaged at the time of the divorce relative to Husband, since he was earning approximately four times as much as she. He clearly had greater earning potential at the time of divorce.

Wife's income and expense statement claims expenses of \$2,260 per month, with a \$1,200 per month negative difference between her income and her expenses. Husband claims monthly expenses of \$1,765, with a monthly surplus of income over expenses of \$266. However, the gross income claimed by Husband on his statement is only \$32, 307, while the testimony showed that he had earned in excess of \$44,000 for the past three years and that his base salary is \$35,000 per year. Using the \$35,000 figure would increase Husband's available gross monthly income by approximately \$200, and using his prior actual earnings would increase that amount by almost \$1,000.

In its 1989 Opinion, this court found that Wife had not worked outside the home since the birth of her first child in 1976 and she had "no particular work skills." *See Catignani*, 1989 WL 126726 at *2. The record before us in this appeal provides no information regarding Wife's educational background or training. Wife testified that she had an adenoma in her head and experienced migraine headaches. There is no evidence regarding how these health problems affect her ability to work, although Wife testified that she experienced migraines about twice a week and those headaches made her unable to tolerate light or noise.

The trial court's failure to make a specific finding regarding the feasibility of Wife's rehabilitation does not preclude our review of the issue. *See, e.g., Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App.1992). In the 1989 Opinion, this court modified the trial court's award of \$150 per month in rehabilitative alimony to extend the duration from fourteen months to "until such time as the wife has been rehabilitated," implicitly concluding that Wife was rehabilitatable. Ten years have gone by since that Opinion was issued, but there is nothing in the record before us now which indicates that that conclusion is no longer valid. Since that Opinion, Wife has, in fact, become employed as a school bus driver for ten months of the year. Thus, Wife has made efforts at rehabilitation and has become partially self-sufficient. We find that it is feasible that Wife can become self-sufficient or more self-sufficient if provided that

opportunity through temporary rehabilitative support.

Accordingly, we find it appropriate to modify the trial court's award of alimony *in futuro* to an award of rehabilitative alimony. If, during the term of rehabilitative support, Wife demonstrates an inability to be totally self-sufficient in spite of her reasonable rehabilitative efforts, the trial court may extend the term of rehabilitative support or grant alimony *in futuro* to supplement Wife's earning capacity. *See Loria*, 952 S.W.2d at 838.

Having considered the statutory factors and the facts of this case, we are of the opinion that Wife is entitled to rehabilitative alimony in the amount of $600 per month for five years. Husband is entitled to a credit for the excess he has paid during the pendency of this appeal.

VI.

Lastly, Husband argues that the trial court erred in directing him to pay $2,610.77 in attorney fees. In the context of a divorce proceeding attorney fee awards are considered as alimony *in solido*. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App.1988). The awarding of attorney fees lies within the sound discretion of the trial court, and unless we find that the evidence preponderates against such an award, we will not disturb it on appeal. *See Storey*, 835 S.W.2d at 597. Upon considering the relative financial position of the two parties, including but not limited to the ability of each party to pay their own attorney fees, we are of the opinion that the evidence does not preponderate against this award. We affirm the award of attorney fees to Wife.

VII.

The judgment of the trial court is affirmed as modified herein. The proceeds from the sale of the marital residence are to be divided equally between the parties after payment to Husband of $9,756. Wife is awarded $8,000 plus interest from the date of her entitlement thereto, September, 1995, until the date of the parties' remarriage in June of 1996. Wife is also awarded $12,000 as her share of the increase in the value of Husband's retirement account during the second marriage. Wife is awarded rehabilitative alimony in the amount of six hundred dollars ($600) per month for a period of five (5) years. The case is

remanded to the trial court for such further proceedings as may be necessary. Costs in this cause on appeal are taxed to Appellant, for which execution may issue if necessary.

                             _____

                             PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____

BEN H. CANTRELL,
PRESIDING JUDGE, M. S.


_____

WILLIAM B. CAIN, JUDGE