IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2003 Session

## JACKIE R. CLINE v. EMILY C. PLEMMONS

**Direct Appeal from the Chancery Court for McMinn County**
**No. 19362     Hon. Jerri S. Bryant, Chancellor**

**FILED JANUARY 23, 2004**

**No. E2002-02584-COA-R3-CV**

This is a dispute between brother and sister over the handling of the affairs as conservators of their mother. The brother appeals from the Trial Court's rulings as to compensation, attorney's fees and conservatorship. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

Jackie R. Cline, Etowah, Tennessee, *pro se.*

Emily C. Plemmons, Knoxville, Tennessee, *pro se.*

### OPINION

In this action the Trial Court on February 12, 2001, filed an Order appointing Jackie Cline as Conservator of the person of Dorothy Cline, his mother, and Emily Plemmons as Conservator of her mother's Estate.

By way of background, the parties have been involved in this action over the personal and financial care of their disabled mother, Dorothy Cline, since 1997.

Dorothy Cline is mentally disabled and has other health problems. Her husband cared for her until July 1997 when he died, and their son, Jackie Cline, who is employed with the U.S.

Postal Service, had moved back home in 1995 to assist with caring for Dorothy.

The Clines' daughter, Emily Plemmons, lives in Knoxville, 60 miles from the home place. In 1998 these parties filed petitions essentially to appoint a conservator of the person and estate of Dorothy Cline. In May of 1998 the Chancellor declined to appoint a conservator, but ordered temporary arrangements be made to provide proper care for Ms. Cline. The Court determined that the daughter had not been able to appropriately visit due to her brother's control, and that the brother, Jackie Cline, "appears to have co-mingled his assets with those of his mother". The Court ordered the investigation to identify Ms. Cline's assets.

The parties engaged in numerous disputes before the Court until the Court entered an Order on September 18, 2002 which provided in pertinent part:

The unauthorized items of furniture bought and previously credited to Cline against his claim for sitter's compensation, and the roof put on the home, shall remain in the estate; Cline must show proof of ownership of any other items he claims.

He was Ordered to furnish the social security numbers of two sitters and provide it to Plemmons for use in tax preparation.

The Court denied Cline's request for conservator fees in addition to the $1,500.00 which had already been awarded.

With respect to Cline's claim for sitting fees, the Court held that Cline had received the benefit of room and board and the value of certain assets which included the service station and its improvements, the Court held that in consideration of the expenses required to marshal and preserve the assets of the estate, and the costs and damage to the estate already caused by Cline by improper handling of financial matters, that no additional sitter fees were justified other than those already ordered.

Finally, the Court said the tax returns for 1997-2000 were to be amended to correct the original returns to the extent possible with the data available.

Cline on appeal essentially questions all the above rulings by the Court, and additionally raises as an issue the appointment of Plemmons as the Conservator of the Estate, as well as the reasonableness of attorney's fees awarded to Plemmons.

Our review of findings of fact by the Trial Court is *de novo* with a presumption of correctness. Questions of law are reviewed without the benefit of that presumption. Tenn. R. App. P. 13(d). The abuse of discretion standard requires that a trial court's ruling "be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000).

Cline cites the Internal Revenue Code, 26 U.S.C.A. § 7401 and 7402, and argues the Trial Court had no authority to order the amendment of tax returns. The section has no application to this case, but applies to IRS procedure in commencing an action to recover taxes on behalf of the United States.

The Trial Court has the authority to order the parties to follow the law, which in this case requires a correction of incorrect tax returns, in compliance with federal tax law. Cline argues that the sitters are self-employed persons and may pay their own taxes as independent contractors, and that he was simply doing what the sitters requested by not withholding taxes and paying them in cash. He also contends that the back taxes should not be paid unless this Court ordered it. The record shows that the Estate has been penalized by the IRS for filing improper tax returns, and the Trial Court merely ordered that amended returns be filed to correct the returns. This issue is without merit.

As a subset of this issue, the Trial Court ordered that the social security numbers of the sitters be provided for the purposes of bringing the Estate in compliance with the tax laws. This issue is likewise without merit.

Cline argues that he is entitled to be compensated for sitter services, and on appeal argues there was a contract for these services, but he testified at trial that there was no express contract with his father or mother to provide personal services for them. There is nothing in the record to show any intent by Cline at the time he began rendering services to his parents to bill the Estate or to be paid, and he has asserted this claim only after the differences developed with his sister. The applicable rule expressed over a century ago by the Supreme Court is well stated in *Gorrell v. Taylor,* 64 S.W. 888 (Tenn. 1901) is well settled:

> Children performing services of this character for a parent are presumed to act gratuitously, from motives of affection and duty; and, to entitle them to recover compensation therefor, the burden is upon them to overcome the presumption by showing either an express contract, or such exceptional facts and circumstances as will establish an intention on the one part to charge and on the other to pay, notwithstanding the relation of kinship.

The evidence does not preponderate against the Trial Judge's ruling on this issue.

As to the issue of compensation for services as a conservator, the Court in an Order dated January 2, 2002 said:

> Cline has wasted the assets of the ward by continuing to run the service station at a deficit and failing to file correct tax returns. In addition, the assets would be better served by being managed in a more appropriate manner.

The parties were further warned:

The Court further finds that the administrative expenses of the ward's estate are being depleted because of the litigious nature of the relationship between the parties. the Court noted for the record that if the parties continued to have numerous disagreements, involving needless court time, and litigation concerning aspects of this conservatorship, the Court will remove the conservatorship from both parties. It is not in the ward's best interest for her estate to be depleted by funding the litigation between the ward's children.

Cline also argues the Court erred in splitting the conservatorship with him as conservator of the person and Plemmons as conservator of the estate. In this regard, the Special Master recommended that Plemmons be appointed sole conservator. However, it is now obvious that because of the extreme degree of enmity, these parties apparently cannot work in harmony. A split conservatorship invites a state of perpetual animosity and chaos, especially in view of the fact that Cline must look to Plemmons for reimbursement of expenses.

The Trial Court has broad discretion in appointing and removing conservators, and we do not disturb such appointments absent abuse of discretion. The record establishes that the current arrangement has been detrimental to the Estate, and it will be in order and we direct for the Trial Court to determine anew whether the present arrangement should continue.

Cline also raises the issue of the award of attorney's fees to Plemmons.

The award of attorney's fees is within the sound discretion of the Trial Court and will not be disturbed on appeal unless the evidence preponderates against it. *Miller v. Miller,* 81 S.W.3d 771 (Tenn. Ct. App. 2001). One factor the Court may take into account in awarding attorney's fees is the obstructionist tactics and failure to cooperate with discovery or the court's orders. *Gilliam v. Gilliam,* 776 S.W.2d 81, 87 (Tenn. Ct. App. 1988). The evidence demonstrates that the fees were caused in large part by the contentiousness and obstructionist behavior of Cline, and the Chancellor so found. We find no abuse of discretion in the award of fees by the Trial Court.

The remaining issues raised by Cline are without merit.

On appeal we affirm with instructions.

The cost of this appeal is taxed to Jackie R. Cline, individually.

_____
HERSCHEL PICKENS FRANKS, J.

-4-