IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

**MARGARET MCCORMICK,**

    Plaintiff, Counter-Defendant/Appellee,

Vs.

**DONALD MCCORMICK,**

    Defendant, Counter-Plaintiff/Appellant.

Sumner Chancery No. 96D-233
C.A. No. 01A01-9801-CH-00019

**FILED**

**February 1, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

FROM THE SUMNER COUNTY CHANCERY COURT
THE HONORABLE TOM E. GRAY, CHANCELLOR

John R. Phillips, Jr., Timothy R. Rector
Phillips & Ingrum of Gallatin
For Appellee

Mark Walker
Walker & Associates of Goodlettsville
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

                            **W. FRANK CRAWFORD,**
                            **PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JUDGE** (Retired)

    This case concerns a dispute over the division of marital property, alimony, and

attorney's fees. Appellant, Donald F. McCormick (Husband), appeals from the Final Decree of

Divorce that, *inter alia,* awarded Appellee, Margaret Ann McCormick (Wife), proceeds from a

401K account, rehabilitative alimony, and attorney's fees.

The parties were married on June 8, 1974 in Marion, Ohio and have three minor children from the marriage: two boys, ages 16 and 11, and a girl, age 15. At the time of the hearing, Husband was fifty years of age, and Wife was forty-one. Husband has an Engineering Degree from the University of Cincinnati while Wife has a two-year Associates Degree in secretarial studies. Husband worked more than twenty-four years for the Whirlpool Corporation before accepting employment as a plant manager with the Frigidaire Company in Springfield, Tennessee where he is currently employed. Husband earns approximately $7,800.00 per month,[1] is provided a company car, and is provided several other benefits with his current employment. Prior to the birth of the parties' children, Wife worked as a legal secretary, a bank teller, and at a popcorn company. After the birth of the children, Wife stayed home with the children but continued to work at various jobs over the course of the parties' marriage. Currently, Wife is employed part time as an office administrator at Media Play, Inc. where she earns $6.75 per hour.[2]

On June 11, 1996, Wife filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct on the part of Husband. Husband filed an answer admitting irreconcilable differences while denying guilt of inappropriate marital conduct, and filed a counter-complaint alleging inappropriate marital conduct on Wife's part. On April 9, 1997, the trial court entered a final decree of divorce declaring the parties divorced based upon the finding that both parties shared fault for the demise of their marriage. The decree awarded the parties joint custody of the minor children with Wife designated as the primary custodian and ordered Husband to pay $2,327.00 per month to Wife as child support. The decree ordered that the marital residence be sold and the net proceeds be divided 55% to Wife and 45% to Husband. The decree also awarded each party various items of personal property. Furthermore, as pertinent to our inquiry, the decree provided:

> IT IS FURTHER ORDERED, ADJUDGED, AND
> DECREED that the Husband, Donald F. McCormick, shall retain
> and own as his separate property his personal clothing, personal
> jewelry, and personal memorabilia, the nonmarital portion of the

---

[1] Husband's W-2 form from the Frigidaire Company reveals that his wages for 1996 were $94,063.26.

[2] In 1996, Wife's gross annual earnings were approximately $9,000.00.

Whirlpool Salaried Employee Retirement Plan, calculated as $23,528 in value and $23,381 of the net value (total received $105,272.54) of the Whirlpool 401K Plan.

*         *         *

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Wife shall retain and own, free and clear of any interest of the Husband, the 1995 Mercury Sable and 1985 Volkswagon Golf automobiles with any interest of the Husband, Donald F. McCormick, in and to such vehicles divested from him and vested in the Wife, Margaret A. McCormick.

*         *         *

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Husband, Donald F. McCormick, shall retain all right, title and interest in and to the marital portion of the Whirlpool Salaried Employees Retirement Plan with (valued as $75,495.89) the Wife divested from any interest or claim upon such pension benefits.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Husband, Donald F. McCormick, shall retain and own the 1986 GMC Van and the 1977 Arrow Boat and trailer free and clear of any interest of the Wife which is hereby divest from her and vested in the Husband.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the remaining monies received by the Husband from his liquidation of the Whirlpool 401K Plan shall be utilized to pay marital debts (excepting their home mortgage and the Wife's obligation on the 1995 Mercury Sable automobile) with such marital debts and payments specified as: Crestar Visa, $6,035.96; Chase Mastercard, $4,566.47; BP Visa, $5,726.82; Caster Knott, $475.86; and Nations Bank Visa, $920.52; Band Room, $870.96; Dr. Donald Brothers, $136; Dr. John Martin, $62.50 and Kristy McCormick, $1700. The Wife, Margaret A. McCormick, shall receive $76,000 from the remaining 401K funds.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Husband, Donald F. McCormick, shall pay to the Wife, Margaret A. McCormick, rehabilitative alimony at the rate of $400 per month for seven (7) years with the Court retaining jurisdiction to modify such support or obligation upwards or downwards and with such rehabilitative alimony to terminate upon the Wife's remarriage. Alimony shall be paid in two (2) equal monthly installments on the 1st and 15th day of each month with the first alimony obligation to be due and payable on March 15, 1997.

*         *         *

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that, as alimony in gross, the Wife, Margaret A. McCormick, is awarded the sum of $5,500.00 to defray her attorneys fees and expenses incurred.

*         *         *

On April 28, 1997, Husband filed a Motion for Clarification of Final Decree requesting that the trial court clarify and correct the final decree as to the distribution of the 401K proceeds.[3]

---

[3] The Final Decree of Divorce was filed April 2, 1997, and on April 28, 1997, Husband filed a "Motion for Clarification of Final Decree." The trial court treated this motion as a motion to alter or amend the decree.

3

In the motion, Husband asserted that after taking his separate money and paying the bills as directed, there remains $55,276.05 to be distributed to Wife from the 401K Plan rather than $76,000.00 as the trial court ordered. Furthermore, Husband requested that the trial court apportion the ten percent penalty for early withdrawal of the fund pro rata. On November 12, 1997, Wife filed a motion requesting that the trial court award her additional attorney's fees incurred since the divorce decree.

On December 10, 1997, the trial court entered a Final Order which, in pertinent part, provided:

> IT IS ORDERED, ADJUDGED, AND DECREED that, pursuant to the court's equitable distribution of the parties' marital estate allocating approximately 55% to the Wife, Margaret A. McCormick, and approximately 45% to the Husband, Donald F. McCormick, the court's original direction that Margaret A. McCormick "shall receive $76,000 from the remaining 401K funds" is affirmed and ratified. The Husband has voluntarily paid $50,000 to the Wife and therefore there remains owing an additional payment of $26,000 under this provision and direction.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Wife's Motion For Assessment of Additional Attorney's Fees is denied. The Wife's motion that the attorney's fees ($5,500) previously awarded be withheld from the Husband's portion of real estate proceeds granted.
>
> *          *          *

Husband has appealed and presents the following issues for review:

> (1) Whether the trial court erred in the valuation and distribution of the separate and marital portion of the proceeds from the 401K Plan.
>
> (2) Whether the trial court erred in the duration and amount of alimony awarded to Wife.
>
> (3) Whether the trial court erred in ordering Husband to pay attorney's fees and expenses to Wife.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

### Division of Marital Property

Husband contends that the trial court committed reversible error in the valuation and distribution of the separate and marital portion of the 401K proceeds. While employed at

4

Whirlpool, Husband began a 401K Plan in 1970 in which he contributed $4,111.52 prior to the parties' marriage. During the divorce proceedings, Husband liquidated the 401K Plan which he asserts was done with the agreement of Wife. At the time of liquidation, the 401K account had a net value of $105,272.54. From the liquidated 401K funds, Husband contends that he expended $5554.00 on marital debts and expenses for Wife and the children. Furthermore, Husband states that at the time of the hearing the balance in the 401K account was $97,574.00.

Husband argues that the trial court incorrectly taxed the $5554.00 to his separate portion of the 401K proceeds. Husband submits that the trial court should have awarded him $23,381.00 for his separate portion of the $97,574.00 remaining of the proceeds at the time of the hearing which would have left $74,193.00 in marital funds from the account.

As part of the divorce decree, the trial court ordered that the marital debts owed by the parties, which totaled $20,495.09, be paid from the funds held by Husband. Husband submits that once these debts are deducted from the remaining balance of $74,193.00, there would be a balance of $53,697.91. Alternatively, Husband submits that if the trial court meant to deduct these marital debts from the marital portion of the 401K funds of $81,891.54 prior to the payment of the expenses by Husband during the pendency of the divorce there would then be a remaining balance of $61,396.45.

Husband contends that the trial court erred in its calculations in granting Wife $76,000.00 from the remaining 401K proceeds. He asserts that there was either $61,396.45 or $53,697.91 remaining to distribute in marital funds. Husband submits that there is no logical way to grant Wife $76,000.00 from the marital portion of the 401K proceeds, give him his separate interest, and pay the marital debts. Husband argues that to grant Wife $76,000.00 would strip him of his separate property. He asserts that Wife should only receive $53,697.91 rather than $76,000.00. Furthermore, Husband contends that the trial court erred in not considering the tax and penalty consequences of the liquidation of the 401K Plan. He asserts that we should modify the ruling of the trial court in light of the mathematical error and then should divide the tax and penalty liability equally between the parties.

Wife asserts that Husband's argument is flawed because he focuses his analysis only on the 401K proceeds and not the parties' entire marital estate and marital debts as was done by the trial court which she contends properly intended and achieved an approximate division of 55%

5

to Wife and 45% to Husband. She further submits that Husband's contention would be proper if the 401K fund was the sole liquid asset in the marital estate. Finally, Wife contends that the trial court, in view of the circumstances, correctly valued and distributed the 401K proceeds and that the award of $76,000.00 from the marital estate should be affirmed.

Trial courts have broad discretion in dividing the marital estate upon divorce. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. App. 1995). In *Batson v. Batson*, 769 S.W.2d 849 (Tenn. App. 1988), this Court discussed the equitable division of marital property:

> Tenn. Code Ann. § 36-4-121(a) provides that marital property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983). Accordingly, a trial court's division of the marital estate is entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973), and should be presumed to be proper unless the evidence preponderates otherwise. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).
>
> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

*Batson*, 769 S.W.2d at 859.

In consideration of Husband's motion for clarification, the trial court stated from the bench as follows:

> The Court found that there was a Sable Mercury that had a value of $7,000; a Whirlpool salaried employee retirement plan of $75,495.89 -- this is all in the marital estate -- a 1985 Volkswagon . . . for $1,500; a 1986 GMC van valued at $2,500; a 1977 Arrow glass boat and trailer, $3,000; household goods and furnishings. And then the Court found that there was marital property in the 401K as well as separate property in the 401K. By the Court's calculation there was a net in that property of, I believe, $61,396. That was based upon a deduction of the separate property of Mr. McCormick and then the Court took out $20,495.05 that was taken out because those were marital debts. So the Court was attempting to reach a bottom line on the marital estate. The Court today readjusted its figures by changing the equity in the marital home from $133,407 to $92,500. But even thus making that and taking a look at the award that the court made and what the Court stated -- or what is in the transcript -- but what the court intended and what the Court had written on the docket sheet on 3-12-97, when the court made the division of the marital estate, the Court wrote, "Immediately from the 401K plan, pay to wife $76,000." And that was written on March the 12th.

6

> I'm not sure that was the statement that the Court used but whatever the statement is in the transcript would be the statement.

> In arriving at an equitable division of the marital estate, what the Court did then and what the Court has recalculated was that the equitable division was somewhere in the neighborhood of 55 percent to the wife and 45 percent to the husband. In actuality, in taking a look at this, with the wife to receive the Sable Mercury and the Volkswagon and 55 percent of the $92,000 [from the sale of the marital residence] and $76,000, by the Court's calculation she received somewhere in the neighborhood of $135,100 which comes out actually to be 55.5 percent of the marital estate. And Mr. McCormick receives 44.5 percent of the marital estate. The Court finds that that is in fact equitable and she's entitled to the $76,000 that was awarded.

> Now, the Court took into consideration the taxes but I didn't take into consideration the penalty and I did not use the $6,000 that was used to pay marital bills pending the date of the filing of the divorce and then the hearing on the divorce. And that's the customary practice of the Court that we don't let one party take marital assets and use them to pay off debts -- pay off personal debts or to pay some of the just regular living expenses or expenses that one has or incurs during the period of time that they are waiting to come to trial for the divorce.

> The decision to take out the [401K] rested with Mr. McCormick. He was the only one that could take it out, no matter if he took it out with Ms. McCormick's consent or that she continually requested that he take it out. That was a decision that he made. . . .

From our review of the record, we find that the evidence does not preponderate against the trial court's findings as to the division of property. The trial court reached an equitable division of property with approximately 55% awarded to Wife and approximately 45% awarded to Husband. Taking into account the overall settlement, the trial court properly awarded Wife the $76,000 especially in light of the award of 100% of the Whirlpool Salaried Employees Retirement Plan, which was valued at $75,495.89, to Husband. Husband's argument regarding the $76,000 is flawed in that he focuses solely on the 401K proceeds. What the trial court did was to take into account the overall property settlement in dividing the property and in awarding Wife the $76,000 as it was required to do. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990). Thus, in light of the overall property settlement, the trial court reached a proper equitable distribution of property.

**Alimony**

With regard to his second issue, Husband argues that the trial court erred in awarding Wife $400.00 per month for seven years as rehabilitative alimony. He asserts that the amount and duration of the alimony award is excessive. Husband contends that Wife has had the

7

opportunity to improve her earnings by being offered full time employment with her current employer but turned this down in order to take care of the children. Husband contends that she should have taken the opportunity given the age of the children and his assistance with the children. Furthermore, Husbands asserts that Wife has the ability to find full time, gainful employment with her current skills if she would accept the work offered and that Wife could sharpen her secretary skills within six months to a year to acquire more gainful employment. Finally, Husband argues that Wife is not entitled to any order of alimony given the amount of assets she received from the division of property, the amount of child support awarded, and her ability to obtain gainful, full time employment.

On the other hand, Wife contends that she has pursued better employment and career opportunities, but, given her current job skills and experience, such attempts have been unsuccessful. She submits that she hopes to improve her secretarial skills in order to be able to compete for better employment. She also asserts that even if she obtained better employment, her need for support would not be eliminated since she currently operates the family budget on a deficit of $1,259.32 each month. In addition, Wife asserts that the alimony award does not exceed Husband's ability to pay especially in light of his superior education, work history and earning capacity. Finally, Wife requests that the alimony award be increased to a minimum of $800 per month for a duration of seven years given her needs and Husband's ability to pay.

In Tennessee, there is a preference for rehabilitative alimony. ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn. 1995). The factors used to determine the proper amount of maintenance and support are found in T.C.A. § 36-5-101(d)(1) (Supp. 1998) which provides:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including: (A) The relative earning capacity, obligations, needs, and

financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances." *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. App. 1986). In determining the amount of alimony, "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. App. 1989) (citations omitted). "If one spouse is economically disadvantaged compared to the other, the courts are generally inclined to provide some type of support." *Batson*, 769 S.W.2d at 861.

The trial court correctly determined that Wife should be awarded rehabilitative alimony. The transcript of the divorce hearing indicates that the trial court considered all relevant factors before making the alimony award. The record reveals that Husband has a far greater earning capacity, superior education, better job training, and that Wife needs some support. Given the relative disparity of the parties' present earnings and earning capacities, the length of their marriage, Wife's age, Wife's modest assets, and Wife's need for additional education and

training, we believe the trial court was correct in the alimony award granted to Wife. The amount and duration of the award is reasonable under the facts and circumstances and will not be disturbed.

## Attorney Fees

For his third issue, Husband asserts that the trial court abused its discretion in awarding Wife a portion of her attorney's fees in this case when she was awarded more than sufficient assets with which to pay all of her fees. To the contrary, Wife contends that the award of attorney's fees was proper but should be increased from $5,500.00 to $10,528.60 in order to cover the entire amount of fees incurred. She asserts that the majority of the assets she received had to be spent to provide suitable housing for her family and that she does not have the ability to pay such fees given her current employment status. Wife also requests that she be awarded attorney's fees on this appeal.

Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App. 1988). In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. App. 1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Id.*; *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. App. 1980). Furthermore, the award of attorney's fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. App. 1988).

Considering the record as a whole, and all factors involved, we do not feel that the trial court abused its discretion in ordering Husband to pay a portion of Wife's attorney fees and in the amount awarded. Given the status of the parties and the division of property, Wife does not have the resources or ability to pay these fees while Husband has the ability to pay such. However, we believe that the respective parties should bear the expense of their own attorney's fees for this appeal.

Accordingly, the judgment of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the Appellant.

 

 

 

 

                                      _____

                                      **W. FRANK CRAWFORD,**
                                      **PRESIDING JUDGE, W.S.**

**CONCUR:**

_____

**DAVID R. FARMER, JUDGE**

_____

**HEWITT P. TOMLIN, JR., JUDGE**
(Retired)