# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 13, 2000 Session

## DONALD JOSEPH RUSSO v. DEBRA ANN RUSSO

**Direct Appeal from the Chancery Court for Sumner County**
**No. 98D-355; The Honorable Tom E. Gray, Chancellor**

---

**No. M1999-02380-COA-R3-CV - Filed December 7, 2000**

---

This appeal arises from an action for divorce initiated by Donald Joseph Russo ("Husband") against Debra Ann Russo ("Wife"). The trial court granted Wife an absolute divorce and alimony in futuro; awarded custody of the parties' minor children to Wife; ordered Husband to pay child support in the amount of thirty-two hundred dollars per month with additional child support of two thousand dollars per month to be placed in educational trust for parties' minor children; and awarded the majority of marital assets to Wife. Husband appeals.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and WILLIAM B. CAIN, J., joined.

James C. Bradshaw, III, Nancy A. Vincent, Nashville, for Appellant

Larry Hayes, Jr., Nashville, for Appellee

### OPINION

On August 20, 1998, Husband filed a complaint for divorce in the Sumner County Chancery Court, alleging inappropriate marital conduct, abandonment, and irreconcilable differences. Thereafter, Wife filed an answer and counter-complaint for divorce, alleging inappropriate marital conduct by Husband. Wife later amended her complaint to allege adultery as an additional ground for divorce. Wife also moved to dismiss Husband's complaint for divorce based on the doctrine of unclean hands. At trial on the matter, the following testimony was presented.

Husband and Wife were married in 1979, following their respective graduations from medical and nursing school. In the early years of the marriage, the parties moved several times so

Husband could participate in various internship and fellowship programs. In 1985, the parties moved to Hendersonville, Tennessee, in order for Husband to start a private cardiology practice. Prior to the move, Wife worked as a nurse's aide and a registered nurse. Following the move, Wife remained at home to care for the parties' newly adopted child.[1] Both parties acknowledge that Wife has always served as primary caregiver to the children, now aged fourteen and eight.

From 1985 to 1987, Wife worked part-time for Husband as a bookkeeper for Husband's medical practice. At some point in 1987, Wife refused to continue as a bookkeeper, and the wife of one of Husband's partners took over the duties. The parties' marriage began to deteriorate sometime during this period. Wife felt that Husband did not spend enough time with her and the children because of the long hours spent at his medical practice. Husband also committed adultery on two separate occasions during the marriage.

On May 29, 1997, Wife filed a complaint for divorce that was subsequently withdrawn when the parties reconciled. In 1998, Wife told Husband that she would continue the marriage only if he abandoned his medical practice and moved to a ranch out west. Wife claimed that her "inner spirit" needed to ride the range. Although Husband did not quit his practice, he did agree to buy Wife a farm somewhere nearby. According to Wife, she felt that the marriage was over although she did not intend to refile for divorce.

Wife testified that her living expenses were around eleven thousand dollars per month, and that the expenses for the parties' children were around twenty-two hundred dollars per month. Husband testified that his expenses (excluding alimony and child support) were around sixteen thousand dollars per month. Husband's income for the four years preceding the trial ranged between seven hundred thousand and eight hundred thousand dollars.[2] The parties' marital estate consisted of real property valued at $689,700; investment accounts valued at $1,521,745; retirement accounts worth $805,894; bank accounts valued at $40,926; vehicles worth $28,679; Husband's interest in his medical practice valued at $370,000; and other assets valued at $138,863.

On October 25, 1999, the trial court entered an order granting Wife an absolute divorce. The court held that although both parties were at fault for the demise of the marriage, Husband was more at fault. In addition, the trial court found that Wife's motion to dismiss Husband's complaint for unclean hands was not well taken because his adulterous acts did not cause the parties' divorce. According to the court, Wife condoned one of Husband's adulterous acts and did not know of his other infidelity until after the divorce action was initiated.

Wife was awarded custody of the parties' two minor children, with liberal visitation granted to Husband. The court awarded Wife child support in the amount of thirty-two hundred dollars per

---

[1] The parties' second child was born to the marriage in 1993.

[2] Husband's income was as follows: 1995 ($764,779); 1996 ($805,333); 1997 ($710,036); 1998 ($713,292).

month.[3] This amount included the tuition and school activity fees requested by Wife. In addition, Husband was ordered to pay all of the health care and dental expenses for the parties' children. The court further found that there was no need for an educational trust fund because Husband had sufficiently set aside funds for this purpose.[4] The court later amended this finding and ordered Husband to pay an additional one thousand dollars per child per month into an educational trust fund for the children.

The trial court found that Wife was entitled to alimony in futuro of seven thousand dollars per month, regardless of her training and licensure as a registered nurse and her intention to resume work at some point in the future. The court based the alimony award on Husband's annual income at the time of trial.[5] In addition, the court awarded Wife assets worth approximately 58.73% of the marital estate. This award included all of the investment accounts ($1,521,745); $251,527 of retirement accounts; $24,791 of bank accounts; vehicles worth $18,679; and other assets valued at $35,529. In making the award the court acknowledged Wife received an additional one hundred thousand dollars from Husband as a down-payment for a house prior to the final decree of divorce.

Husband was awarded the remaining 41.27% of the marital estate. His award included the following: real property ($689,000); retirement accounts worth $555,131; bank accounts worth $16,135; a vehicle valued at $10,000; and other assets worth $100,934. Husband appeals.

On appeal, Husband asserts the trial court erred in awarding Wife alimony in futuro rather than rehabilitative alimony. Husband also asserts the division of marital assets is inequitable. Husband claims the court erred in granting the divorce to Wife and in requiring Husband to establish an educational trust for children. Wife raises two additional issues. Wife asserts the trial court erred in failing to dismiss Husband's complaint for divorce. Wife also seeks attorneys' fees on appeal.

**Analysis**

Our review of this case is pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides for a de novo review upon the record of the trial court's findings of fact, accompanied by a presumption of correctness, unless the evidence preponderates otherwise.

---

[3]Although Husband's income exceeded ten thousand dollars per month, the court limited his obligation to thirty-two percent of ten thousand dollars. The court stated that this deviation was appropriate because Husband was ordered to pay all medical and dental expenses for the children as well as their tuition and other costs associated with private education.

[4]At the time of trial, Husband had already set aside approximately $200,000 in investment accounts in the children's names.

[5]Husband attempted to offer proof at trial that his income level would substantially decrease in January 2000, due to the addition of another partner to his medical practice.

## Alimony

Husband asserts that the trial court erred in granting Wife alimony in futuro rather than rehabilitative alimony. Husband claims that due to Wife's substantial award of marital assets as well as her ability to be rehabilitated, alimony in futuro is improper. In addition, Husband requests the amount of alimony awarded be reduced. We agree with Husband. Based upon the following, we find both the term and amount of alimony awarded to Wife should be reduced.

The trial court has broad discretion concerning the amount, type, and duration of spousal support based on the particular facts involved. The exercise of such power will not be interfered with absent a showing of abuse. Watters v. Watters, 959 S.W.2d 585, at 593 (Tenn. Ct. App. 1997) citing Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn.1995); Luna v. Luna, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986). Accordingly, this Court is not inclined to alter a trial court's award of alimony unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. Brown v. Brown, 913 S.W.2d 163, 169 (Tenn. Ct. App.1994); Gilliam v. Gilliam, 776 S.W.2d 81, 86 (Tenn. Ct. App.1988); Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. Ct. App.1986).

Whether an alimony award is appropriate is dependent on the facts and circumstances of each case. While the alimony analysis is factually driven, the court must also balance several statutory factors including those enumerated in § 36-5-101(d).[6] Brown at 169; Denton v. Denton, 902 S.W.2d

---

[6]Tenn. Code Ann. §36-5-101(d) provides:

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C)The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(continued...)

-4-

930, 932 (Tenn. Ct. App.1995). Although all statutory factors listed in Tenn. Code Ann. § 36-5-101(d)(1) are important and will be considered by the trial court, need and the ability to pay are the critical factors in setting the amount of an alimony award.

Tenn.Code Ann. § 36-5-101(d)(1) reflects a preference for temporary, rehabilitative spousal support, as opposed to long-term support. Wilson v. Moore, 929 S.W.2d 367, 375 (Tenn.Ct.App.1996). The purpose of rehabilitative support is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient. Smith v. Smith, 912 S.W.2d 155, 160 (Tenn. Ct. App.1995); Kinard v. Kinard, 986 S.W.2d 220, at 234 (Tenn. Ct. App. 1998) In contrast, the purpose of long-term spousal support is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency. Loria v. Loria, 952 S.W.2d 836, 838 (Tenn.Ct.App.1997). A court may grant alimony in futuro only where rehabilitation is not feasible. Aaron at 410; Self v. Self, 861 S.W.2d 360, 361 (Tenn.1993).

In the case at bar, the express findings of the trial court supported by the record include the following: Wife is financially disadvantaged due to her long absence from the working world; due to Wife's education and training she will eventually be able to resume her profession; both parties are at fault in the marriage break-up. In addition to the facts above, the court must consider all other sources of income available to the dependant spouse. Tenn. Code. Ann. §36-5-101(d)(1)(A). Therefore, we must analyze the alimony award in light of Wife's award of nearly two million dollars of marital assets. In doing so, we find the award of seven thousand dollars alimony in futuro is improper. Accordingly we hereby reduce Wife's alimony award to five thousand dollars per month for a period of five years following the entry of this opinion. Both the time period and the amount of the award will give Wife ample opportunity to bring her job skills and training up to date. Therefore, the decision of the trial court on this issue is reversed.

## Educational Trust

---

[6](...continued)

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(2) An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

Husband asserts that the trial court erred in requiring him to set up and make contributions to an educational trust for the benefit of the parties' children. Husband argues that in light of the investment accounts already in place, the educational trust is unnecessary and improper. We do not agree. For the following reasons, we hold that the educational trust is proper.

While the trial court's findings of facts are entitled to a presumption of correctness on appeal, the lower court's discretion is tempered by the child support guidelines. TENN. R. APP. P. 13 (d); Jones v. Jones, 930 S.W.2d 541, 544 (Tenn. 1996). Statutory authority provides for a rebuttable presumption that the percentage amount of child support provided in the guidelines is the correct amount. However, "[the guidelines] are subject to deviation upward or downward when the assumptions on which they are based do not pertain to a particular situation." Nash v. Mulle, 846 S.W.2d 803, 805 (Tenn.1993) In order to justify a deviation from this amount, the trial court must make written findings outlining the reasons for this deviation. These reasons must show that the deviation is either in the best interest of the child; that the child support guidelines would be unjust or inappropriate; or needed to maintain equity between the parties. Tenn. Code Ann. §36-5-101(e)(1).[7]

Pursuant to the guidelines, the parties' minor children are entitled to thirty-two percent of the obligor's "net income." See TENN. COMP. R. & REGS. Tit. 10, Ch. 1240-2-4-.03.[8] In the case at bar, Husband's child support obligation would amount to approximately twelve thousand dollars per month.[9] The court below limited that amount to thirty-two hundred dollars per month. The court based its deviation from statutory guidelines on Husband's payment of the children's medical and dental expenses as well as all educational expenses. In addition, the court required Husband to contribute one thousand dollars per month per child into educational trust to provide for the college expense of the children. Therefore, Husband's total child support obligation totaled fifty-two hundred dollars per month.

---

[7] Tenn. Code Ann. §36-5-101(e)(1) provides: In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

[8] Tenn.Comp.R. & Regs., ch. 1240-2-4-.04(3) provides as follows: The court must order child support based upon the appropriate percentage of all net income of the obligor as defined according to 1240-2-4-.03 of this rule but alternative payment arrangements may be made for the award from that portion of net income which exceeds $6,250. When the net income of the obligor exceeds $6,250 per month, the court may establish educational or other trust funds for the benefit of the child(ren) or make other provisions in the child(ren)'s best interest; however, all of the support award amount based on net income up through $6,250 must be paid to the custodial parent.

[9] This figure is based on Husband's 1998 income of $713,292.

While this amount may seem both excessive and unnecessary to Husband, we find that the trial court's decision is proper. In ordering Husband to contribute to the educational trust, the court noted that its decision was affected by both the uncertainty of the investment funds growth potential and the rising costs of education. Upon review, we find this presents adequate justification for the establishment of the educational trust. Therefore, the trial court's decision on this issue is affirmed.

## Division of Marital Assets

Husband asserts the trial court's division of marital assets is inequitable. Wife was awarded approximately sixty percent of the marital assets, with Husband receiving the remaining forty percent. For the following reasons, we find that the division was equitable and the decision of the trial court should be affirmed.

After characterizing the parties' assets as either marital or separate property, the trial court will make an equitable division of marital assets. An equitable division of property does not necessarily mean an equal division. Bookout v. Bookout, 954 S.W.2d 730 (Tenn. Ct. App. 1997); Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). "The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." King v. King, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) citing Cohen v. Cohen, 937 S.W.2d 823, 832 (Tenn.1996); Ellis v. Ellis, 748 S.W.2d 424, 427 (Tenn.1988); Brown v. Brown, 913 S.W.2d 163. In determining what constitutes an equitable division of marital assets, the court will consider the factors listed in Tenn. Code Ann. §36-4-121(c).[10] The trial court's classification and division of marital property enjoys a presumption of correctness and will be reversed or modified only if the evidence preponderates against the court's decision. Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App.1984); Hardin v. Hardin, 689 S.W.2d 152, 154 (Tenn. Ct. App.1983).

---

[10]Tenn. Code Ann. §36-4-121(c) provides:
In making equitable division of marital property, the court shall consider all relevant factors including:
   (1) The duration of the marriage;
   (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
   (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
   (4) The relative ability of each party for future acquisitions of capital assets and income;
   (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
   (6) The value of the separate property of each party;
   (7) The estate of each party at the time of the marriage;
   (8) The economic circumstances of each party at the time the division of property is to become effective;
   (9) The tax consequences to each party; and
   (10) Such other factors as are necessary to consider the equities between the parties.

As stated above, the trial court is granted broad discretion in adjusting and adjudicating the parties' interest in all jointly owned property. Its decision regarding division of the marital property is entitled to great weight on appeal. Watters at 590; citing Batson at 859. The fairness of the property division is judged upon its final results. With the forgoing in mind and considering all relevant factors, we do not find the final results of the trial court's distribution to be inequitable. Accordingly, the divisions of assets as determined by the trial court is hereby affirmed.

### Attorney's Fees

Wife requests attorney's fees incurred on appeal. For the following reasons, we hold that Wife is entitled to attorney's fees incurred on appeal. In a divorce case, attorneys' fees may be properly allowed as part of the alimony awarded. Raskind v. Raskind, 325 S.W.2d 617, 625 (Tenn. Ct. App. 1959). When the spouse seeking an award of legal expenses lacks sufficient funds to pay her expenses or would be required to deplete her resources, the award of legal expenses is appropriate. Brown, at 170; Butler v. Butler, 680 S.W.2d 467 (Tenn. App. 1984). Based upon the foregoing, as well as the circumstances presented in this case, we find that Wife is entitled to an award of legal expenses incurred on appeal.

### Remaining Issues

As a final matter, we find it unnecessary to discuss the remaining issues raised by the parties. In particular, Husband's appeal of the grant of divorce to Wife and Wife's appeal of the lower court's refusal to dismiss Husband's divorce complaint are irrelevant in light of our ruling on the other issues. As neither of these issues affect our disposition of this case, they do not merit consideration.

### Conclusion

Based on the foregoing, the decision of the trial court is affirmed in part and reversed in part. Costs of this appeal are taxed to Appellant, Donald Joseph Russo for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE