IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 19, 2001 Session

## GLENNA C. FINK v. RICHARD H. FINK

**Appeal from the Chancery Court for Knox County**
**No. 137556-2    Chancellor Telford E. Forgerty, Jr., by Designation**

**FILED APRIL 11, 2001**

**No. E2000-02468-COA-R3-CV**

Glenna C. Fink ("Wife") filed a Complaint for Divorce against Richard H. Fink ("Husband") on the grounds of inappropriate marital conduct and irreconcilable differences. Husband filed an Answer and Counter-Complaint seeking a divorce on the same grounds. The Trial Court awarded the divorce to Wife and dismissed Husband's Counter-Complaint. The parties agreed to the sale of the marital residence, and the Trial Court awarded Wife $14,000.00 in attorney's fees out of the sale of the proceeds, with the remaining proceeds from the sale to be split 55% to Wife and 45% to Husband. Wife was awarded the full interest in her retirement/disability benefits. The Trial Court also determined that certain sums which Husband claimed were marital property were actually a gift to the parties' minor daughter and the daughter was, therefore, entitled to keep these funds. The Trial Court further awarded Wife $450.00 per month as alimony *in futuro*. Husband filed a Motion pursuant to Rules 59.02 and 59.04 of the Tenn. R. Civ. P. challenging these determinations. The Trial Court denied Husband's motion, and Husband appeals. We affirm, award Wife attorney's fees incident to this appeal, and remand this matter to the Trial Court for a determination of the amount of reasonable attorney's fees incurred by Wife on appeal.

**Tenn R. App. P. 3 Appeal as of Right;**
**Judgment of the Trial Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the Appellant, Richard H. Fink.

D. Vance Martin, Knoxville, Tennessee, for the Appellee, Glenna C. Fink.

# OPINION

## Background

On February 25, 1998, Plaintiff Glenna C. Fink ("Wife") filed a Complaint for Absolute Divorce against Defendant Richard H. Fink ("Husband") on the grounds of inappropriate marital conduct and irreconcilable differences. Husband filed an Answer and Counter-Complaint for Divorce seeking a divorce on the same grounds. The parties were married on September 24, 1970, and two daughters were born of this marriage, one of whom was still a minor at the time of the divorce. Trial occurred on February 16 and 17, 1999. All matters were contested, except the parties agreed that Wife would have residential custody of the minor child.

At the time of trial, Wife was forty-six years old. Wife married Husband when she was in high school and dropped out of school to move with Husband to Ohio. She obtained a GED approximately six years later. Wife took approximately one year of college courses, but quit when she moved with Husband to Louisiana. Wife worked various jobs at the beginning of the marriage, such as waitressing, cashiering, and as a baker in a grocery store. From 1980 to 1984, Wife worked as a secretary for the IRS. After taking a year and a half off of work because of child care issues, Wife went to work at a bank for a few months. After working for the bank, she went to work in the U.S. Attorney's office as a legal secretary. On her third day of employment, she was involved in a train wreck. As a result of injuries to her back resulting from the train wreck, she received a settlement in the amount of $104,000.00, after attorney's fees were deducted. Wife returned to work on a part-time basis and continued to work until she had surgery on her back in 1990, and has not worked since. Wife was involved in an automobile accident in 1994, and received $14,000.00 in settlement of that claim. This accident made the condition of her back worse. As a result of her back condition, Wife is disabled and cannot work. She receives $568.00 per month in social security disability benefits, and $490.74 per month in retirement/disability benefits from her employment with the federal government. The parties' minor daughter, Cassie, receives $106 per month in social security benefits. These three checks total $1,164.74, which is the amount of monthly income listed by Wife on her Affidavit of Monthly Income and Expenses filed with the Trial Court.

Wife testified that Husband began physically abusing her from the very beginning of the marriage. She also testified that Husband often looked at pornographic magazines and wanted her to perform sexually in the same manner as the women in the magazines. Wife testified that on January 12, 1998, Husband insisted that she perform oral sex on him, which she refused. Wife stated that she left the bedroom but Husband came looking for her. When she refused to accompany him to the bedroom, Wife claims that he "slugged" her on the arm. She then yelled at their daughter, Cassie, to call 911. After Husband ran up the steps in an attempt to stop her from calling, Cassie dropped the phone. The 911 operator called back to the residence, and Wife informed the operator

that there was an Order of Protection against Husband and to send assistance.[1]  Husband was arrested soon thereafter.  Wife testified that she finally took definitive action in filing for divorce because she thought Cassie was in danger with this latest incident.

The parties maintained a joint account referred to as the "Sterling Account" with TVA Credit Union.  According to Wife, over the years funds from several different sources had been placed into this account.  At times, both Wife's and Cassie's social security checks were deposited into this account, as was Husband's benefits from the Veteran's Administration and payroll checks.  Wife testified that money which had been accumulating for Cassie's education was also in this account.  Shortly after the parties separated, Wife claims that pursuant to Husband's specific instructions, one-half of the funds in this account were divided equally between Husband and Wife, with the remaining one-half being set up in an account for Cassie.  Approximately $2,500.00 was later withdrawn from Cassie's account to purchase a computer for her, and Cassie withdraws $40.00 per month from that account as an allowance.  Husband testified that he had no knowledge of Wife's taking money out of this account until after she had already done so.  He also testified that the money in that account was not Cassie's, but rather was joint marital property.  A tape recorded conversation was introduced on cross-examination of Husband.  In that recording, Husband's comments strongly supported the testimony of Wife that Husband had instructed her to set aside certain sums in that account for the benefit of Cassie.

At the time of trial, Husband was forty-eight years old.  Husband earned a Master's Degree in Business Administration from Baldwin-Wallace College.  Husband works for the Internal Revenue Service and conducts civil and criminal investigations of individuals, corporations, and partnerships.  Husband earns a salary in excess of $72,000.00.  Husband testified that on the night of January 12, 1998, he and Wife had been fighting, that Wife charged at him and stated she could not take it anymore, and began hitting him.  Husband admits he hit Wife one time that night, but claims it was in self-defense.  Husband had surgery on his knees in 1997, and surgery on his back in 1998, but these injuries do not prevent his working.  Husband testified that Wife was a willing participant in viewing pornographic material, and that Wife wanted him to perform sexual acts on her that were too painful for his injured knees.  He also claimed Wife physically assaulted him at various times during the marriage.

The Affidavit of Monthly Income and Expenses filed by Wife shows monthly income of $1,164.74, and monthly expenses of $2,610.15, resulting in a shortfall of $1,445.41, which does not take into account discretionary and entertainment expenses.  This calculation does not include child support payments.  The Affidavit of Monthly Income and Expenses filed by Husband shows monthly net income of $3,747.04, and monthly expenses of $3,696.67, after deducting discretionary and entertainment expenses.  Husband included as expenses both a rent payment of $650.00 as well as the mortgage payment of $1,337.25 on the marital residence which was to be sold.  The parties

---

[1] On July 3, 1997, Wife obtained an Ex Parte Order of Protection against Husband based on allegations of physical abuse and threatened physical abuse.  It appears that this Order was never actually served on Husband.

later stipulated that Husband's net earnings per month were $4,329.18, and Husband admitted that his actual rent payment was $445.00.

On February 18, 1999, the Trial Court issued its Memorandum Opinion. The Trial Court concluded that Husband's testimony regarding the marriage was inconsistent with a letter he wrote to Wife on January 13, 1998, and his allegations of abuse and of sexual "malfunction" on Wife's part were not credible. Accordingly, the Trial Court awarded the divorce to Wife on the grounds of inappropriate marital conduct and dismissed Husband's counter-claim.

With regard to division of marital property, the Trial Court noted that the parties were basically debt-free with the exception of the mortgage on the martial residence. The parties agreed to the sale of the marital residence. The Trial Court ordered $14,000.00 from the proceeds of the sale to be paid to Wife for her attorney's fees. Husband testified at trial that he had paid $13,800.00 towards his attorneys' fees. The remaining proceeds from the sale of the home were divided with 55% going to Wife, and 45% to Husband. The parties had $13,550 in savings bonds, which the Trial Court ordered to be split equally. Wife was awarded the funds in her checking and savings accounts totaling $2,473.55, and Husband was awarded the funds in his checking and savings accounts totaling $2,098.00. Addressing the money in the "Sterling Account," the Trial Court reviewed the testimony of both parties, and concluded that "the credible evidence, including his [Husband's] own recorded conversation with his wife, indicates that as of the date of that recording, the parties had intended that this money be given to Cassie as a gift." Wife was awarded one-half interest in the $15,439.36 in Husband's Thrift Savings Plan, and was also awarded a one-half interest in Husband's Retirement Plan. Wife was awarded one vehicle valued at $14,175.00, and Husband received the remaining two vehicles with a combined value of $16,750.00. The amount Husband received which equaled more than fifty percent of the value of the vehicles combined was an off-set against overpayments made by Husband for child support payments. With regard to the $490.74 received monthly by Wife for retirement/disability benefits from the federal government, the Trial Court concluded that this money was being used by Wife as current support and she should, therefore, receive all of this income. Husband was given the option of deducting the interest on the marital residence or claiming Cassie as a dependent for 1998. For 1999, he was allowed to claim Cassie as a deduction.

In making the division of marital property, the Trial Court specifically stated that it was relying on the ten factors set forth in Tenn. Code Ann. § 36-4-121, with particular emphasis on the duration of the marriage, the relative ability of each party for future acquisition of capital assets and income, the contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of the party to the marriage as homemaker, wage earner or a parent, the economic circumstances of the parties at the time of the division, as well as the other factors set forth in the statute.

Addressing Wife's request for spousal support, the Trial Court made the following determination:

-4-

[T]he Court has considered the twelve factors set out in 36-5-101(d) and, in particular, the relative earning capacity, obligations, needs and financial resources of each party, including income from pensions, profit sharing and retirement plans and all other sources, the relative education and training of each party and the ability and opportunity of each party to secure such education and training to improve such party's earning capacity to a reasonable level, the duration of the marriage, the age and mental condition of each party and the physical condition of each party, including physical disabilities or incapacities due to chronic debilitation or disease, further, the standard of living of the parties established during the marriage and, to some extent, the relative fault of the parties.

It was submitted to the Court as EXHIBIT 2, the report of Dr. Julian Nadolsky, a vocational and occupational disability expert. Dr. Nadolsky reviewed a number of medical reports regarding Mrs. Fink's current condition and noted that the prognosis for significant improvement of her condition was poor.

He further noted that the limitations imposed upon her by the medical doctors, combined with the severe and persistent pain she endures, would prevent her from maintaining employment in any field. Nevertheless, Dr. Nadolsky has opined, apparently without the benefit of any supporting medical evidence, that the wife's condition might improve.

Therefore, since this is a conceivable event, that is, the improvement of her condition, the Court feels it appropriate to allow reconsideration of any spousal support in the event that her condition improves to the point that she would become employable in the open market. The wife will provide medical reports from her attending physicians regarding her back condition so that if so desired, the husband can ask that this matter be reconsidered at a later date.

It should be specifically noted that, while employability would be a factor for reconsideration, there should be no inference nor implication that this Court would necessarily modify any award of spousal support because of her employability. Certainly, it would be considered.

Likewise, the husband's ability to pay, as well as all of the other relevant factors, have been given consideration in setting the

amount of spousal support. This necessarily includes consideration of his child support obligations for the coming years.

Therefore, to make it again abundantly clear, the Court reserves the right to reconsider and modify any award of spousal support upon the satisfaction of any child support obligations the husband may have. With these reservations, the Court awards alimony in futuro in the amount of $450.00 per month . . . .

On May 24, 1999, the Trial Court entered a Final Judgment of Divorce. On June 23, 1999, Husband filed a Motion for New Trial, or in the Alternative, Motion to Alter or Amend the Judgment pursuant to Rules 59.02 and 59.04 of the Tenn. R. Civ. P. In the Motion, Husband requested, among other things, a new trial or for the Trial Court to amend its judgment with regard to the following five determinations: (1) deducting $14,000 from the sale of the marital residence for Wife's attorney's fees; (2) dividing the remaining proceeds from the sale of the house on a 55%-45% basis in favor of Wife; (3) allowing Cassie to retain the funds that were placed in an account for her which the Trial Court determined was a gift; (4) allowing Wife to retain the full interest in her retirement/disability payments; and (5) awarding to Wife alimony *in futuro* in the amount of $450.00 per month. On November 3, 1999, the Trial Court denied Husband's motion on these issues. On December 1, 1999, Husband filed a Notice of Appeal and challenges the denial of his Motion for New Trial, or in the Alternative, Motion to Alter or Amend the Judgment on these five issues.

### Discussion

In reviewing the Trial Court's denial of a motion for a new trial or a motion to alter or amend the judgment, our scope of review is to determine if the Trial Court abused its discretion in denying the motion. *See Bradley v. McLeod*, 984 S.W.2d 929 (Tenn. Ct. App. 1998)(reviewing the denial of a Rule 59.04 motion on the basis of whether the trial court abused its discretion). A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

As to the property division, Husband asserts that the Trial Court erred in awarding Wife 55% of the proceeds of the sale of the marital house. Apparently, Husband argues that the proceeds should have been split 50/50. Husband also alleges error on the part of the Trial Court in not awarding him one-half of Wife's retirement/disability benefits of $490.74 per month which she receives from the federal government.

In the Joint Stipulation of Assets and Liabilities filed with the Trial Court, Husband valued the equity in the house at $70,000, assuming the house sells for the listed price. After

deducting $14,000.00 for Wife's attorney's fees (discussed *infra*), the net proceeds are potentially $56,000.00. Husband's 45% percent share of this amount is $25,200, whereas a 50% share would be $28,000.00, for a difference of $2,800.00. When considering the equity in the home, the assets divided by the Trial Court (such as cash, retirement benefits, automobiles, etc.), as well as the household items as valued by Husband, the entire marital estate exceeds $200,00.00.

The factors to be considered by a trial court in making an "equitable" distribution of property are set forth in Tenn. Code Ann. § 36-4-121(c), many of which were explicitly relied upon by the Trial Court in its award discussed above. As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

In our opinion, the Trial Court equitably divided the marital property, even if each particular asset was not divided exactly on a 50/50 basis. Considering the size of the marital estate, the disparity between the award of the proceeds from the sale of the home is relatively slight. While the retirement/disability benefits of Wife were awarded solely to her, it is not error simply because Husband "did not receive a share of every item of marital property." *King*, 986 S.W.2d at 219. Husband complains that the Trial Court did not treat Wife's retirement/disability benefits as marital property subject to an equitable division. We disagree. We believe that the Trial Court treated this as martial property, but gave the entire interest to Wife as part of the overall equitable division of the marital property. It is also worth mentioning that Husband retained a full interest in the disability benefits he receives from the VA in the amount of $168.60 per month. The Trial Court properly considered all relevant factors in reaching its conclusion as to the overall equitable division of marital property. We find no error by the Trial Court in its equitable division of the marital property. It is not the role of this Court to fine-tune an overall equitable property division crafted by a trial court.

Next, we consider the Trial Court's award of alimony *in futuro* to Wife of $450.00 per month. Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not

supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard*, 986 S.W.2d at 234.

Determinations concerning the amount and duration of alimony are factually driven and require a balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). These factors include:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G) The separate assets of each party, both real and personal, tangible and intangible;
>
> (H) The provisions made with regard to the martial property as defined in § 36-4-121;
>
> (I) The standard of living of the parties established during the marriage;
>
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The statute also provides that it is the intent of the general assembly that an economically disadvantaged spouse be rehabilitated whenever possible with the payment of temporary support and maintenance. When this is not feasible after considering all relevant factors, then the court may award support and maintenance on a long term basis, or alimony *in futuro*.

We agree with the Trial Court's conclusion that this is a proper case for an award of alimony *in futuro*. Wife did not complete either high school or college in order to move with Husband depending on where his career took him, although she did obtain a GED. Wife is currently totally disabled and the likelihood of her obtaining employment is quite poor. Husband has a Master's Degree and is a long time employee of the Internal Revenue Service currently earning over $72,000.00 per year. The parties agreed that Wife will be the residential custodian of the minor daughter. When all of the relevant factors set forth in Tenn. Code Ann. § 36-5-101(d)(1) are considered, we find no error by the Trial Court in awarding $450.00 per month in alimony *in futuro*. As noted by the Trial Court, in the event that Wife's medical condition improves to the point where she can once again become gainfully employed, then Husband can request the Trial Court to reconsider this determination.

Husband argues that the Trial Court erred in ordering him to pay Wife's attorney's fees. Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether to award attorney fees, a trial court should consider the relevant factors set forth in Tenn. Code Ann. § 36-5-101(d)(1), *supra*. Awards of attorney fees are within the sound discretion of the trial court, and will not be disturbed on appeal unless the evidence preponderates against the award. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. Cpp. 1995). Applying the relevant factors, we find no error by the Trial Court in awarding Wife her attorney's fees. This is especially true given Wife's need and her significant physical disability and resulting inability to work. We also note that the Trial Court ordered the marital residence sold and the proceeds to be divided 55% to Wife and 45% to Husband, a decision which we affirmed previously in this opinion. As such, Wife actually is paying 55% of her attorney's fees out of her proceeds from the sale of the house, and Husband is paying 45%, or $6,300.00. That there has been no error by the Trial Court is even more evident when considering Husband already paid his various attorneys $13,800.00 prior to trial.[2]

---

[2] The amount of attorney's fees actually sought by Wife was $16,185.00. Approximately $712.50 of these fees pertained to a matter is general sessions court which arguably was not directly related to this divorce action, thereby leaving the amount of fees that potentially could have been claimed at $15,469.95.

Husband argues that the Trial Court erred when it concluded that the money in Cassie's account was a gift to Cassie as opposed to marital property subject to equitable distribution. In Tennessee, the formal requirements for making a gift are the intention by the donor to make a present gift coupled with the delivery of the subject of the gift by which complete dominion and control of the property is surrendered by the donor. *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1996). It is undisputed that Husband no longer had dominion or control of the money in Cassie's account. The issue for the Trial Court was whether Husband intended to make a gift to Cassie of these funds. Although Husband denied such an intent, this denial was inconsistent with his comments in a recorded conversation as well as Wife's testimony. Resolution of this issue involved a factual determination by the Trial Court, who concluded that Wife's testimony that the parties intended to make a gift was credible. We find no reversible error in this factual determination by the Trial Court and no error in refusing to grant a new trial or to alter or amend the judgment with this award of funds to Cassie.

As set forth above, Wife is disabled and it is unlikely that she will be able to become actively employed in the future. The Trial Court equitably divided the martial property and awarded Wife alimony *in futuro* because temporary support was not a feasible option to rehabilitate Wife. We see no need to deplete the assets awarded to Wife so that she can pay her attorney's fees in defending the judgment of the Trial Court, which we affirm in all respects. Accordingly, we award Wife her reasonable attorney's fees incurred on this appeal, and remand this case to the Trial Court for a determination on the fees to be awarded incident to this appeal. *See Meredith v. Meredith*, 1988 WL 125818 (Tenn. Ct. App., Nov. 28, 1988).

## Conclusion

The judgment of the Trial Court is affirmed. This matter is remanded to the Trial Court to determine the amount of reasonable attorney's fees to be awarded Wife incident to this appeal. The costs of this appeal are taxed to Richard H. Fink, and his surety.

_____
D. MICHAEL SWINEY, JUDGE