IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 1, 2002 Session and October 7, 2002 Session

## TAWNYA LYNN DUKE v. ROBERT S. DUKE

**Appeal from the Chancery Court for Williamson County**
**No. 26604      Russ Heldman, Judge**

―――――――――――

**Nos.   M2001-00080-COA-R3-CV - Filed January 14, 2003**
**M2002-00026-COA-R3-CV - Filed January 14, 2003**

―――――――――――

In this opinion we will dispose of two appeals involving these parties. In the first appeal, the husband asserted that the trial court erred in awarding alimony in futuro and in the division of the marital property. While that appeal was pending in this court, the husband appealed (1) the trial court's subsequent refusal to modify the amount of alimony in futuro and (2) the trial court's award of attorney's fees to the wife. We reverse the court's order of alimony in futuro in the first proceeding, because we believe that under the circumstances of this case, the wife is only entitled to rehabilitative alimony. We also modify the amount of alimony awarded in the second proceeding, and we reverse the award of attorney's fees in the second proceeding. In all other respects, the court's orders are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Reversed in Part; Modified in Part; Affirmed in Part; and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., concurs; and WILLIAM C. KOCH, JR., J., concurs in Parts II a. and b.; Part III; and Part IVa; and FRANK G. CLEMENT, JR., SP. J., concurs in Part II c. and Part IV b.

Jeffrey L. Levy, Nashville, Tennessee, for the appellant, Robert S. Duke.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Tawnya Lynn Duke.

### OPINION

### I.

The parties married in 1988, when the wife was twenty years of age and the husband twenty-nine. The husband had a son from a previous marriage, who soon came to live in the marital home. Ms. Duke gave up her career as a cosmetologist to stay at home with her stepson, and with the two children subsequently born of the marriage.

At the time of the marriage, Mr. Duke owned part of a business called Music City Florists. Mr. Duke and his partners sold that business shortly after the marriage, and Mr. Duke started a successful insurance agency.

Ms. Duke filed for divorce on October 28, 1999, alleging irreconcilable differences, cruel and inhuman treatment, and that Mr. Duke had offered such indignities to her person as to render her condition intolerable. On April 3, 2000, Mr. Duke filed a counterclaim alleging that Ms. Duke had been guilty of inappropriate marital conduct. The parties, however, continued to live together for another month.

On the first day of the trial, after extensive venting during opening statements, the parties stipulated that Ms. Duke should be granted a divorce and rehabilitative support. The trial proceeded on the remaining issues, and at the end, the court granted Ms. Duke the divorce and alimony in futuro in the amount of $2000 per month. Ms. Duke got custody of the children, and the court ordered Mr. Duke to pay $2119 per month in child support. The court divided the marital property, and awarded Ms. Duke $41,150.68 in attorney's fees.

## II.
### ALIMONY
#### a.

Mr. Duke asserts that the court should have honored the parties' stipulation that Ms. Duke be awarded rehabilitative support. After reviewing the record, we are convinced that in making that stipulation the parties thought they were agreeing that rehabilitative support was all that Ms. Duke was entitled to. The inducement to stipulate fault and short term spousal support occurred during the opening statements, when the court said:

> And I haven't heard anybody in this case ask anybody for long-term alimony or alimony in futuro. I heard the word "rehabilitative."

> So I'm just wondering if perhaps maybe at a little break after these excellent opening statements that if anybody is interested in reducing what could end up being a very contentious and damaging emotionally kind of hearing, I'm open to it. I don't know how else to say it without stepping beyond my role as judge and into a mediation situation, which I'm not supposed to do unless we have a mediation hearing.

> But I'm just wondering if we need to do all that and to have people come in and, you know, one person say something and the other person say, "Well, that person is not telling the truth" – those kinds of things – and focus more on these children and making a proper division of marital property and making a proper rehabilitative alimony ruling, unless there is a denial that rehabilitative is even at issue.

After that encouragement by the court, the parties agreed that they would not try the divorce issues and that Ms. Duke was entitled to rehabilitative support.

Nevertheless, the court awarded alimony <u>in futuro</u>, treating the stipulation as setting the <u>minimum</u> that could be awarded. Ms. Duke argues that a stipulation is like a contract; therefore, it is subject to interpretation, and the court properly interpreted the parties' agreement. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694 (Tenn. Ct. App. 1999). We would agree that the court must interpret the parties' agreement – if it is ambiguous or otherwise unclear. But, as we have noted, there is nothing ambiguous or unclear about the stipulation. Coming as it did at the court's suggestion that no one was even asking for long term support, we think the court should have enforced the agreement.

We would hesitate to say that a trial judge is bound in every case by a stipulation. But, in the absence of a showing that the stipulation resulted from fraud, or a mistake or that it would result in an injustice, we think the parties should be able to select the issues they wish to try.

**b.**

In addition, we do not think the facts support an award of alimony <u>in futuro</u>. We use as a starting point Tenn. Code Ann. § 36-5-101(d) which provides:

> (1) It is the intent of the General Assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3).

The same statute also sets out several factors to be considered in determining the appropriate duration of a support order. They are:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C)  The duration of the marriage;

(D)  The age and mental condition of each party;

(E)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F)  The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G)  The separate assets of each party, both real and personal, tangible and intangible:

(H)  The provisions made with regard to the marital property as defined in § 36-4-121;

(I)  The standard of living of the parties established during the marriage;

(J)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)  The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(2)  An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increase, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.  Rehabilitative support and maintenance shall terminate upon the death of the recipient.  Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated.  The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

We review an award of spousal support on an abuse of discretion standard.  *See Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996).  "Appellate courts are generally disinclined to

-4-

second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Anderton v. Anderton*, 988 S.W.2d 675 at 682 (Tenn. Ct. App. 1998). In stating a policy favoring rehabilitative support, the legislature has directed the courts to provide where possible, the means for a disadvantaged spouse to become and remain self-sufficient. *Id.*

We have determined that Ms. Duke is capable of becoming self-sufficient and that the statutory factors weigh in favor of rehabilitative support. This marriage was of a moderate duration. Ms. Duke is still a young woman; she has marketable skills and a job that with time will provide her with a significant income. Although the trial judge discounted her testimony that she could earn $50,000 a year, her potential for economic independence is of a high order. She has received treatment for some psychological problems, but she attributes those to having to live with Mr. Duke, and the proof does not support a finding that the condition is permanent or debilitating. As the court noted in *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000), an award of alimony in futuro in such a case would not further the legislative purpose of encouraging divorced spouses to be self-sufficient. Therefore, we modify the award of spousal support to rehabilitative support for a period of seven years from the date of the divorce.

**c.**

The level of support is one of the issues raised in the second appeal. Mr. Duke filed a petition for a reduction in his child support and alimony on June 6, 2001. He alleged that his earning capacity in 2001 was only $70,000, in contrast to the $120,000 to $125,000 figure found by the trial court in the final decree.

The trial court did in fact reduce Mr. Duke's child support obligation from $2,119 per month to $1,492 per month. According to the Child Support Guidelines, that level of child support would require an income of $81,000 per year. The court, however, concluded that Mr. Duke had an earning capacity of $120,000 per year. Based on that conclusion, the court left Mr. Duke's spousal support obligation at $2,000 per month.

We think the evidence preponderates against the court's conclusion. Mr. Duke testified that the gross income of his insurance agency was $106,209 for the first nine months of 2001. He attributed the reduction in revenue to a slowing economy and changes in the underwriting guidelines of the insurance companies he represents. Considering the expenses for that same period, his actual income was approximately $43,800, or $4867 per month. His testimony was corroborated by an independent accountant, who keeps Mr. Duke's books and does his tax returns. Although some of the expenses shown on the ledgers were for items personal to Mr. Duke, we think that his income is now substantially less than it was in the years before the divorce. Considering all the factors set forth in Tenn. Code Ann. § 36-5-101(d)(1) we reduce the monthly support award to $1500 and make it retroactive to November 28, 2001, the date of the lower court's order.

**III.**

## THE MARITAL PROPERTY

In all actions for divorce, trial courts are required to make an equitable distribution of the marital property of the parties. Tenn. Code Ann. § 36-4-121(a)(1). The factors to be considered are many and varied, see Tenn. Code Ann. § 36-4-121(c)(1-11), but in dealing with the family home, the courts should give special consideration to a spouse having custody of the children. Tenn. Code Ann. § 36-4-121(d). The division does not have to be equal, *Ford v. Ford*, 952 S.W.2d 824 (Tenn. Ct. App. 1996), and the appellate courts will ordinarily defer to the trial court's decision unless it is inconsistent with the statutes or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163 (Tenn. Ct. App. 1994); *Mahaffey v. Mahaffey*, 775 S.W.2d 618 (Tenn. Ct. App. 1989).

According to Mr. Duke, he received net assets of $137,000 and Ms. Duke received net assets of approximately $217,356. His total reflected the fact that the trial judge assigned virtually all the marital debt to him and ordered him to pay all the outstanding attorney's fees for both parties ($26,150.68 for Ms. Duke and $11,835 to his own attorneys). The bulk of the award to Ms. Duke was composed of the marital home ($110,000 equity) and an IRA account worth $72,289.

Mr. Duke received his insurance agency, which the court valued at $200,000. When we consider that this business is generating at least $56,000 a year in net income during an economic downturn, we think that award is the most significant award of all the marital property. One of the factors to be considered is the ability of one party to acquire future assets and income. Tenn. Code Ann. § 36-4-121(c)(4). Therefore, we do not think the trial judge's division of the marital property was inequitable.

## IV.
### MS. DUKE'S ATTORNEY'S FEES
#### a.

In the first appeal, Mr. Duke asserts that the court erred in making him pay a total of $41,150.68 for Ms. Duke's attorney. He does not assert that the amount was exaggerated or inflated.

Awards for legal expenses in divorce proceedings are treated as awards for additional support. *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988). The decision is within the sound discretion of the trial court. *Aaron v. Aaron*, 909 S.W.2d 408 (Tenn. 1995). Even where a party has liquid assets, the court may order the other party to pay the attorney's fees if payment would result in a significant depletion of those assets. *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988).

Here, Ms. Duke was not awarded any liquid assets. Withdrawal from the IRA would result in severe penalties and the balance of the award to her is tied up in the home. Since Mr. Duke had the greater ability to pay the fees, we do not think the court erred in ordering him to do so.

#### b.

The fees awarded in the second proceeding are another matter. The court ordered Mr. Duke to pay $1,575.00 to Ms. Duke's attorney, and this order is one of the issues involved in the second appeal.

Tenn. Code Ann. § 36-5-103(c) reads as follows:

(c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, or the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Mr. Duke argues, although not too forcefully, that this section does not allow the court to award fees to a defendant spouse in a post divorce proceeding – especially if the moving party is successful in obtaining relief. We do not agree with Mr. Duke's interpretation of the statute. The key is in the words "enforcing any decree for alimony or child support . . . ." A spouse who defends a petition to change an alimony or child support order is acting to enforce it. The statute does not distinguish between winners and losers, and while the courts have sometimes made that a factor, see *Placencia v. Placencia*, 3 S.W.3d 497 (Tenn. Ct. App. 1999), we do not think it is the determining factor. In each case the court should do what is equitable. *See Sherrod v. Wix*, 849 S.W.2d 780 (Tenn. Ct. App. 1992).

In this proceeding, the equities are pretty evenly divided. Neither party has a reservoir of funds from which to pay the fees of the other. Each was partially successful. So, we think it is equitable to hold that they should each pay the fees of their own attorneys. We, therefore, reverse the award of fees to Ms. Duke in the post-divorce proceeding and we deny her application for fees on the appeal of either case.

The lower court's orders are reversed/modified as indicated herein and we remand both cases to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal equally to the parties.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.